OSCAR MAYER & CO. ET AL. *v.* EVANS

No. 78–275.   Argued February 28, 1979—Decided May 21, 1979

752

BRENNAN, J., delivered the opinion of the Court, in which STEWART, WHITE, MARSHALL, and BLACKMUN, JJ., joined, and in all but Part III of which BURGER, C. J., and POWELL, REHNQUIST, and STEVENS, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 765. STEVENS, J., filed an opinion concurring in part and dissenting in part, in which BURGER, C. J., and POWELL and REHNQUIST, JJ., joined, *post*, p. 767.

*James W. Gladden, Jr.*, argued the cause for petitioners. With him on the briefs were *Arthur J. Kowitt* and *William J. Reifman.*

*Mark W. Bennett* argued the cause for respondent. With him on the brief was *Gordon E. Allen. Allan A. Ryan, Jr.*, argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General McCree, Deputy Solicitor General Easterbrook*, and *Dennis D. Clark.**

---

*\*Stephen A. Bokat* and *Stanley T. Kaleczyc* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging reversal.

Mr. Justice Brennan delivered the opinion of the Court.

Section 14 (b) of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 607, as set forth in 29 U. S. C. § 633 (b), provides in pertinent part:

> "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided*, . . . [i]f any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority."

This case presents three questions under that section. First, whether § 14 (b) requires an aggrieved person to resort to appropriate state remedies before bringing suit under § 7 (c) of the ADEA, 29 U. S. C. § 626 (c). Second, if so, whether the state proceedings must be commenced within time limits specified by state law in order to preserve the federal right of action. Third, if so, whether any circumstances may excuse the failure to commence timely state proceedings.

We hold that § 14 (b) mandates that a grievant not bring suit in federal court under § 7 (c) of the ADEA until he has first resorted to appropriate state administrative proceedings. We also hold, however, that the grievant is not required by § 14 (b) to commence the state proceedings within time limits specified by state law. In light of these holdings, it is not

necessary to address the question of the circumstances, if any, in which failure to comply with § 14 (b) may be excused.

## I

Respondent Joseph Evans was employed by petitioner Oscar Mayer & Co. for 23 years until his involuntary retirement in January 1976. On March 10, 1976, respondent filed with the United States Department of Labor a notice of intent to sue the company under the ADEA. Respondent charged that he had been forced to retire because of his age in violation of the Act. At approximately this time respondent inquired of the Department whether he was obliged to file a state complaint in order to preserve his federal rights. The Department informed respondent that the ADEA contained no such requirement. Relying on this official advice, respondent refrained from resorting to state proceedings. On March 7, 1977, after federal conciliation efforts had failed, respondent brought suit against petitioner company and company officials in the United States District Court for the Southern District of Iowa.

Petitioners moved to dismiss the complaint on the grounds that the Iowa State Civil Rights Commission was empowered to remedy age discrimination in employment and that § 14 (b) required resort to this state remedy prior to the commencement of the federal suit. The District Court denied the motion, and the Court of Appeals for the Eighth Circuit affirmed.[1] 580 F. 2d 298 (1978). We granted certiorari, 439 U. S. 925 (1978). We reverse.

## II

Petitioners argue that § 14 (b) mandates that in States with agencies empowered to remedy age discrimination in employment (deferral States) a grievant may not bring suit

---

[1] The Court of Appeals initially reversed the District Court but on rehearing withdrew its opinion and substituted an opinion affirming the District Court.

under the ADEA unless he has first commenced a proceeding with the appropriate state agency. Respondent, on the other hand, argues that the grievant has the option of whether to resort to state proceedings, and that § 14 (b) requires only that grievants choosing to resort to state remedies wait 60 days before bringing suit in federal court. The question of construction is close, but we conclude that petitioners are correct.

Section 14 (b) of the ADEA was patterned after and is virtually *in haec verba* with § 706 (c) of Title VII of the Civil Rights Act of 1964 (formerly § 706 (b)), 78 Stat. 259, as redesignated, 86 Stat. 104, 42 U. S. C. § 2000e–5 (c).[2] The relevant portion of § 706 (c) reads as follows:

> "In the case of an alleged unlawful employment practice occurring in a State, . . . which has a . . . law prohibiting the unlawful employment practice alleged and establishing or authorizing a State . . . authority to grant or seek relief from such practice . . . , no charge may be filed . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State . . . law, unless such proceedings have been earlier terminated . . . ."

Congress intended through § 706 (c) to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in "a voluntary and localized manner." See 110 Cong. Rec. 12725 (1964) (remarks of Sen. Humphrey). The section is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination. See *Voutsis* v. *Union Carbide Corp.*, 452 F. 2d 889 (CA2 1971).

---

[2] See Hearings on S. 830 et al. before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 90th Cong., 1st Sess., 102 (1967) (testimony of Mr. Biemiller); *id.*, at 228 (testimony of Mr. Conway).

Because state agencies cannot even attempt to resolve discrimination complaints not brought to their attention, the section has been interpreted to require individuals in deferral States to resort to appropriate state proceedings before bringing suit under Title VII. See *Love* v. *Pullman Co.*, 404 U. S. 522 (1972); *Olson* v. *Rembrandt Printing Co.*, 511 F. 2d 1228 (CA8 1975).[3]

Since the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, since the language of § 14 (b) is almost *in haec verba* with § 706 (c), and since the legislative history of § 14 (b) indicates that its source was § 706 (c), we may properly conclude that Congress intended that the construction of § 14 (b) should follow that of § 706 (c). See *Northcross* v. *Memphis Board of Education*, 412 U. S. 427, 428 (1973). We therefore conclude that § 14 (b), like § 706 (c), is intended to screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings. We further conclude that prior resort to appropriate state proceedings is required under § 14 (b), just as under § 706 (c).

The contrary arguments advanced by respondent in support of construing § 14 (b) as merely optional are not persuasive. Respondent notes first that under Title VII persons aggrieved must file with a state antidiscrimination agency before filing with the Equal Employment Opportunity Commission (EEOC). See 42 U. S. C. § 2000e–5 (c). Under the ADEA, by contrast, grievants may file with state and federal agencies simultaneously. See 29 U. S. C. §§ 626 (d) and 633 (b).[4] From this respondent concludes that the ADEA pays less deference to state agencies and that, as a consequence, ADEA claimants have the option to ignore state remedies.

---

[3] Even respondent concedes that under § 706 (c) resort to appropriate state proceedings is mandatory, not optional. See Brief for Respondent 18.

[4] ADEA grievants may file with the State before or after they file with the Secretary of Labor.

We disagree. The ADEA permits concurrent rather than sequential state and federal administrative jurisdiction in order to expedite the processing of age-discrimination claims. The premise for this difference is that the delay inherent in sequential jurisdiction is particularly prejudicial to the rights of "older citizens to whom, by definition, relatively few productive years are left." 113 Cong. Rec. 7076 (1967) (remarks of Sen. Javits).

The purpose of expeditious disposition would not be frustrated were ADEA claimants required to pursue state and federal administrative remedies simultaneously. Indeed, simultaneous state and federal conciliation efforts may well facilitate rapid settlements. There is no reason to conclude, therefore, that the possibility of concurrent state and federal cognizance supports the construction of § 14 (b) that ADEA grievants may ignore state remedies altogether.

Respondent notes a second difference between the ADEA and Title VII. Section 14 (a) of the ADEA, 29 U. S. C. § 633 (a), for which Title VII has no counterpart, provides that upon commencement of an action under ADEA, all state proceedings are superseded. From this, respondent concludes that it would be an exercise in futility to require aggrieved persons to file state complaints since those persons may, after only 60 days, abort their involuntary state proceeding by filing a federal suit.

We find no merit in the argument. Unless § 14 (b) is to be stripped of all meaning, state agencies must be given at least some opportunity to solve problems of discrimination. While 60 days provides a limited time for the state agency to act, that was a decision for Congress to make and Congress apparently thought it sufficient. As Senator Dirksen told the Senate during the debates on § 14 (b)'s predecessor, § 706 (c) of Title VII:

"[A]t the local level . . . many cases are disposed of in a matter of days, and certainly not more than a few weeks.

In the case of California, FEPC cases are disposed of in an average of about 5 days. In my own State it is approximately 14 days." 110 Cong. Rec. 13087 (1964).

Respondent argues finally that a Committee Report that accompanied 1978 ADEA amendments supports his construction of § 14 (b).[5] This Committee Report suggested that resort to state remedies should be optional under § 14 (b). See S. Rep. No. 95–493, pp. 6–7 (1978), adopted in Joint Explanatory Statement of the Committee of Conference, H. R. Conf. Rep. No. 95–950, pp. 7, 12 (1978).

We are not persuaded. Senate Report No. 95–493 was written 11 years after the ADEA was passed in 1967, and such "[l]egislative observations . . . are in no sense part of the legislative history." *United Airlines, Inc.* v. *McMann,* 434 U. S. 192, 200 n. 7 (1977). "It is the intent of the Congress that enacted [the section] . . . that controls." *Teamsters* v. *United States,* 431 U. S. 324, 354 n. 39 (1977). Whatever evidence is provided by the 1978 Committee Report of the intent of Congress in 1967, it is plainly insufficient to overcome the clear and convincing evidence that Congress intended § 14 (b) to have the same meaning as § 706 (c). We therefore hold that under § 14 (b) of the ADEA, as under § 706 (c) of Title VII, resort to administrative remedies in deferral States by individual claimants is mandatory, not optional.[6]

## III

We consider now the consequences of respondent's failure to file a complaint with the Iowa State Civil Rights Commission. Petitioners argue that since Iowa's 120-day age-dis-

---

[5] Respondent concedes that the amendments themselves "are not relevant to the questions raised in this case." Brief for Respondent 3 n. 1.

[6] This rule, of course, governs only claims for individual relief, such as the present case. Nothing in our decision in anywise disturbs the rule of *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 414 n. 8 (1975), concerning the rights of unnamed parties in plaintiff class actions.

crimination statute of limitations has run, see Iowa Code §§ 601A.14 (1), (15) (1975), it is now too late for respondent to remedy his procedural omission and that respondent's federal action is therefore jurisdictionally barred. Respondent pleads that since his failure to file was due to incorrect advice by the Department of Labor, his tardiness should be excused.

Both arguments miss the mark. Neither questions of jurisdiction nor questions of excuse arise unless Congress mandated that resort to state proceedings must be within time limits specified by the State. We do not construe § 14 (b) to make that requirement. Section 14 (b) requires only that the grievant *commence* state proceedings. Nothing whatever in the section requires the respondent here to commence those proceedings within the 120 days allotted by Iowa law in order to preserve a right of action under § 7 (c).

We start with the language of the section. Section 14 (b) provides, in relevant part, that

> "no suit may be brought . . . before the expiration of sixty days after proceedings have been *commenced* under the State law, unless such proceedings have been earlier terminated." 29 U. S. C. § 633 (b) (emphasis added).

By its terms, then, the section requires only that state proceedings be commenced 60 days before federal litigation is instituted; besides commencement no other obligation is placed upon the ADEA grievant. In particular, there is no requirement that, in order to commence state proceedings and thereby preserve federal rights, the grievant must file with the State within whatever time limits are specified by state law. Rather, use of the word "commenced" strongly implies the opposite—that state limitations periods are irrelevant—since, by way of analogy, under the Federal Rules of Civil Procedure even a time-barred action may be "commenced" by the filing of a complaint. See Fed. Rule Civ. Proc. 3; *Magalotti* v. *Ford Motor Co.*, 418 F. Supp. 430, 434 (ED Mich. 1976).

This implication is made express by the last sentence of § 14 (b), which specifically provides:

"If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority." 29 U. S. C. § 633 (b).

State limitations periods are, of course, requirements "other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based." Therefore, even if a State were to make timeliness a precondition for commencement, rather than follow the more typical pattern of making untimeliness an affirmative defense, a state proceeding will be deemed commenced for purposes of § 14 (b) as soon as the complaint is filed.

This has been the prevailing interpretation of § 14 (b). See *Nickel* v. *Shatterproof Glass Corp.*, 424 F. Supp. 884 (ED Mich. 1976); *Magalotti* v. *Ford Motor Co.*, *supra.*[7] It is also the prevailing interpretation of § 14 (b)'s counterpart, § 706 (c) of Title VII, which contains an identical definition of commencement. See *Davis* v. *Valley Distributing Co.*, 522 F. 2d 827, 831–833 (CA9 1975), cert. denied, 429

---

[7] A number of cases have reached a similar result upon slightly different theories. See, *e. g.*, *Skoglund* v. *Singer Co.*, 403 F. Supp. 797 (NH 1975) (timely state complaint not required unless there has been a deliberate bypass of state procedure); *Bertsch* v. *Ford Motor Co.*, 415 F. Supp. 619 (ED Mich. 1976) (timely state complaint not required if state limitations period significantly shorter than 180 days). See also *Vaughn* v. *Chrysler Corp.*, 382 F. Supp. 143 (ED Mich. 1974) (timely state complaint not required if claimant detrimentally relied upon mistaken official advice). Two cases have reached contrary results. See *Graham* v. *Chrysler Corp.*, 15 FEP Cases 876 (ED Mich. 1976); *McGhee* v. *Ford Motor Co.*, 15 FEP Cases 869 (ED Mich. 1976).

U. S. 1090 (1977); *Olson* v. *Rembrandt Printing Co.,* 511 F. 2d, at 1232; *Pinckney* v. *County of Northampton,* 433 F. Supp. 373, 376 n. 1 (ED Pa. 1976); *McAdams* v. *Thermal Industries, Inc.,* 428 F. Supp. 156, 161 (WD Pa. 1977); *De Gideo* v. *Sperry-Univac Co.,* 415 F. Supp. 227, 229 (ED Pa. 1976); see also *White* v. *Dallas Independent School Dist.,* 581 F. 2d 556, 562 n. 10 (CA5 1978) (en banc) (filing with EEOC tolls state limitations period for federal purposes); *Ferguson* v. *Kroger Co.,* 545 F. 2d 1034 (CA6 1976) (EEOC's negligent failure to refer charge to state agency within state limitations period does not foreclose federal claim). But see *Richardson* v. *Miller,* 446 F. 2d 1247 (CA3 1971).

It is also the EEOC's interpretation of § 706 (c), see Case No. KC7–5–315, CCH EEOC Decisions (1973) ¶ 6024 (1969), and as such is "entitled to great deference." *Griggs* v. *Duke Power Co.,* 401 U. S. 424, 434 (1971).

This construction of the statute is fully consistent with the ADEA's remedial purposes and is particularly appropriate "in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love* v. *Pullman Co.,* 404 U. S., at 527.

It is also consistent with the purposes of § 14 (b). Section 14 (b) does not stipulate an exhaustion requirement. The section is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief. Individuals should not be penalized if States decline, for whatever reason, to take advantage of these opportunities. See *Pacific Maritime Assn.* v. *Quinn,* 465 F. 2d 108 (CA9 1972). Congress did not intend to foreclose federal relief simply because state relief was also foreclosed. See *Voutsis* v. *Union Carbide Corp.,* 452 F. 2d, at 893.[8]

---

[8] This is made clear by Senator Humphrey's remarks to the Senate concerning the limits of federal deference under § 706 (c):

"[W]e recognized the absolute necessity of providing the Federal Govern-

The structure of the ADEA reinforces the conclusion that state procedural defaults cannot foreclose federal relief and that state limitations periods cannot govern the efficacy of the federal remedy. The ADEA's limitations periods are set forth in explicit terms in 29 U. S. C. §§ 626 (d) [9] and (e),[10] not § 14 (b), 29 U. S. C. § 633 (b). Sections 626 (d) and (e) adequately

ment with authority to act in instances where States and localities did not choose to exercise these opportunities to solve the problem of civil rights in a voluntary and localized manner. The basic rights protected by [Title VII] are rights which accrue to citizens of the United States; the Federal Government has the clear obligation to see that these rights are fully protected. In instances where States are unable or unwilling to provide this protection, the Federal Government must have the authority to act." 110 Cong. Rec. 12725 (1964).

[9] Title 29 U. S. C. § 626 (d) provides:

"No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

"(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

"(2) in a case to which section 633 (b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

"Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

[10] Title 29 U. S. C. § 626 (e) provides:

"Sections 255 and 259 of this title shall apply to actions under this chapter."

Title 29 U. S. C. § 255 provides in relevant part:

"Any action commenced on or after May 14, 1947 . . .

"(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

protect defendants against stale claims. We will not attribute to Congress an intent through § 14 (b) to add to these explicit requirements by implication and to incorporate by reference into the ADEA the various state age-discrimination statutes of limitations. Cf. *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355, 371 (1977). Congress could not have intended to consign federal lawsuits to the "vagaries of diverse state limitations statutes," *ibid.,* particularly since, in many States, including Iowa, the limitations periods are considerably shorter than the 180-day period allowed grievants in nondeferral States by 29 U. S. C. § 626 (d)(1). See *De Gideo* v. *Sperry-Univac Co., supra,* at 231 n. 9.

That Congress regarded incorporation as inconsistent with the federal scheme is made clear by the legislative history of § 706 (c)'s definition of commencement—the same definition later used in § 14 (b). Proponents of Title VII were concerned that localities hostile to civil rights might enact sham discrimination ordinances for the purpose of frustrating the vindication of federal rights. See 2 B. Schwartz, Statutory History of the United States: Civil Rights 1330 (1970). The statutory definition of commencement as requiring the filing of a state complaint and nothing more was intended to meet this concern while at the same time avoiding burdensome case-by-case inquiry into the reasonableness of various state procedural requirements. Cf. *NAACP* v. *Alabama ex rel. Patterson,* 357 U. S. 449 (1958). As Senator Humphrey explained to the Senate:

> "[T]o avoid the possible imposition of onerous State requirements for initiating a proceeding, subsection (b) provides that to comply with the requirement of prior resort to the State agency, an individual need merely send a written statement of the facts to the State agency by registered mail." 2 Schwartz, *supra,* at 1352.

The strongest argument against this construction of the statute is that it would permit grievants to avoid state inter-

vention by waiting until the state statute of limitations has expired and then filing federal suit, thus frustrating the intent of Congress that federal litigation be used as a last resort.

No reason suggests itself, however, why an employee would wish to forgo an available state remedy. Prior resort to the state remedy would not impair the availability of the federal remedy, for the two are supplementary, not mutually exclusive. A complainant would save no time by bypassing the state remedy since the federal court must, in any event, defer to the State for 60 days, and is required to defer no longer. See *Davis* v. *Valley Distributing Co.,* 522 F. 2d 827 (CA9 1975); *Nickel* v. *Shatterproof Glass Corp.,* 424 F. Supp. 884 (ED Mich. 1976).[11]

We therefore hold that respondent may yet comply with the requirements of § 14 (b) by simply filing a signed complaint with the Iowa State Civil Rights Commission. That Commission must be given an opportunity to entertain respondent's grievance before his federal litigation can continue. Meanwhile, the federal suit should be held in abeyance. If, as respondent fears, his state complaint is subsequently dismissed as untimely, respondent may then return to federal

___

[11] Moreover, even the danger that state remedies will be *inadvertently* bypassed by otherwise proper ADEA plaintiffs will soon become nonexistent. After July 1, 1979, the EEOC will administer the ADEA. See Reorg. Plan No. 1 of 1978, 3 CFR 321 (1979). Discrimination charges will have to be filed with the EEOC within time limits specified by federal law, and the EEOC already has a regular procedure whereby discrimination complaints are automatically referred to appropriate agencies as soon as they are received. See *Love* v. *Pullman Co.,* 404 U. S. 522 (1972); 29 CFR § 1601.13 (1978). Thus, the deference to state agencies required by § 14 (b) will soon become automatic.

In any event, even if the risk of bypass of state agencies were real, which it is not, States could readily avoid the possibility by extending their limitations periods to 180 days and by tolling their statutes of limitations upon the filing of a timely charge with the Department of Labor. See *Davis* v. *Valley Distributing Co.* Cf. *Burnett* v. *New York Central R. Co.,* 380 U. S. 424 (1965).

court.[12]   But until that happens, or until 60 days have passed without a settlement, respondent must pursue his state remedy.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to that court with instructions to enter an order directing the District Court to hold respondent's suit in abeyance until respondent has complied with the mandate of § 14 (b).[13]

*It is so ordered.*

MR. JUSTICE BLACKMUN, concurring.

My preference in this case would have been to affirm the judgment of the Court of Appeals.   I am so inclined because I regard the Age Discrimination in Employment Act to be a remedial statute that is to be liberally construed, and because

---

[12] Whether Iowa may toll its statute of limitations from the date that respondent contacted the Department of Labor is a question of Iowa law not for our decision.   See *Iowa Civil Rights Comm'n* v. *Massey-Ferguson, Inc.,* 207 N. W. 2d 5, 8 (Iowa 1973).

[13] Suspension of proceedings is preferable to dismissal with leave to refile.   Respondent's timely complaint has already satisfied the requirements of 29 U. S. C. § 626 (e).   "To require a second 'filing' by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love* v. *Pullman Co., supra,* at 526–527 (charge may be held in suspended animation during deferral period).   For this reason, suspension pending deferral is the preferred practice in the federal courts.   See *Crosslin* v. *Mountain States Tel. & Tel. Co.,* 400 U. S. 1004 (1971) (judgment of dismissal for want of jurisdiction arising from failure to defer vacated; case remanded for consideration of stay pending deferral); *Gabriele* v. *Chrysler Corp.,* 573 F. 2d 949, 956 n. 18 (CA6 1978); *Oubichon* v. *North American Rockwell Corp.,* 482 F. 2d 569, 571 (CA9 1973); *Parker* v. *General Telephone Co. of the Northwest, Inc.,* 476 F. 2d 595, 596 (CA9 1973); *Mitchell* v. *Mid-Continent Spring Co. of Ky.,* 466 F. 2d 24, 26–27 (CA6 1972), cert. denied, 410 U. S. 928 (1973); *Motorola, Inc.* v. *EEOC,* 460 F. 2d 1245, 1246 (CA9 1972); *Bertrand* v. *Orkin Exterminating Co., Inc.,* 419 F. Supp. 1123, 1130 (ND Ill. 1976); *Winsey* v. *Pace College,* 394 F. Supp. 1324, 1329 (SDNY 1975).

I feel that an affirmance would give full recognition to that remedial character. In addition, I could be persuaded that state procedures and remedies in existence at the time the Act was passed in 1967 were not particularly helpful for the complainant and were procedurally frustrating; that the fact that a federal proceeding supersedes one on the state side indicates which is to be dominant; that ADEA proceedings have their analogy in Fair Labor Standards Act litigation and not in Title VII proceedings; that no waiting period is required before a complainant may resort to a federal remedy (whereas, in striking contrast, under Title VII, state jurisdiction is exclusive for 60 days); that one could reasonably regard the statute as affording a complainant the option of filing either on the state side or on the federal side, and the constraints of § 14 (b) as applicable only if he pursues the state remedy; that it seems so needless to require an untimely state filing that inevitably, and automatically, is to be rejected; that the legislative history of the 1978 amendments, see *ante,* at 758,* while of course not conclusive, might well be regarded, because of its positiveness and clarity, as shedding at least some helpful illumination upon persistent and continuing congressional intent in and since 1967; and that the Government's participation as *amicus curiae* on the side of the respondent also affords some indication of the intended interplay of the federal and state legislation.

The Court acknowledges that the "question of construction is close." *Ante,* at 755. But this is one of those cases that occasionally appears in the procedural area where it is more important that it be decided (in order to dispel existing conflict, see *ante,* at 760–761, and n. 7) than that it be decided correctly.

---

*"[A]n individual who has been discriminated against because of age is free to proceed either under state law or under federal law. The choice is up to the individual." S. Rep. No. 95–493, p. 7 (1978), adopted in Joint Explanatory Statement of the Committee of Conference, H. R. Conf. Rep. No. 95–950, pp. 7, 12 (1978).

Inasmuch as I feel that I can live with the Court's decision in this case and that, in the long run, justice will not be denied to anyone possessed of a valid claim, I join the Court's opinion and its judgment.

Mr. Justice Stevens, with whom The Chief Justice, Mr. Justice Powell, and Mr. Justice Rehnquist join, concurring in part and dissenting in part.

Section 14 (b) of the Age Discrimination in Employment Act of 1967, 81 Stat. 607, 29 U. S. C. § 633 (b), explicitly states that "no suit may be brought" under the Act until the individual has first resorted to appropriate state remedies. Respondent has concededly never resorted to state remedies. In my judgment, this means that his suit should not have been brought and should now be dismissed.

Throughout this litigation both parties have assumed that dismissal would be required if § 14 (b) is construed to mandate individual resort to state remedies in deferral States. In Part II of its opinion, which I join, the Court so construes the statute. However, in Part III of its opinion, the Court volunteers some detailed legal advice about the effect of a suggested course of conduct that respondent may now pursue and then orders that his suit be held in abeyance while he follows that advice.

Regardless of whether the Court's advice is accurate—a question that should not be answered until some litigant has raised it—I am unable to join Part III. If respondent should decide at this point to resort to state remedies, and if his complaint there is found to be time barred, and if he should then seek relief in federal court, the question addressed in Part III of the Court's opinion—whether § 14 (b) requires resort to state remedies "within time limits specified by the State"— would then be presented. But that question is not presented now, and I decline to join or to render an advisory opinion on its merits. I would simply order that this suit be dismissed in accordance with "the mandate of § 14 (b)." *Ante,* at 765.