# Reimbursement of the Internal Revenue Service for Investigative Services Provided to the Independent Counsel

To the extent that Internal Revenue Service agents detailed to an independent counsel perform work that is related to the type of work for which the IRS receives its appropriations, the detail falls within an exception to the general rule against non-reimbursable details. Reimbursement by the independent counsel is appropriate for work performed by the detailed agents that is not IRS-related.

September 30, 1988

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
FOR ADMINISTRATION

## Introduction and Summary

This responds to your memorandum asking for the opinion of this Office concerning the propriety of reimbursing the Internal Revenue Service ("IRS") for the services of IRS agents assigned to assist Independent Counsel Lawrence E. Walsh and James C. McKay.[1] The IRS, which entered into agreements to be reimbursed by the independent counsel for the services of IRS agents, contends that it must receive reimbursement and that reimbursement cannot be waived. For the reasons stated below, we conclude that to the extent that an IRS agent detailed to an independent counsel performs activities related to the purposes of the IRS, the detail falls within an exception to the general rule against the reimbursable details. This conclusion is consistent with a recent congressional committee report which, while only a matter of legislative guidance, suggests that reimbursement by the independent counsel to the IRS is inappropriate where "agents will presumably be performing IRS work—investigating federal tax fraud." However, with respect to all work that does not fall within that exception, the IRS should seek reimbursement from the independent counsel.

## Analysis

A federal agency must spend its funds on the objects for which they were appropriated. 31 U.S.C. § 1301(a). A corollary to this statutory rule is that an agency may not augment its appropriations from outside sources without specific statu-

---

[1] Memorandum for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Harry H. Flickinger, Assistant Attorney General for Administration, Justice Management Division (May 6, 1988).

tory authority. *See generally* United States General Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law* 5–62 to 5–63 (1st ed. 1982) (explaining the augmentation theory). The statute and its corollary combine to create a general prohibition on the detail of employees from one federal agency to another on a non-reimbursable basis. "To the extent that agencies detail employees on a nonreimbursable basis . . . they may be avoiding congressional limitations on the amount of moneys appropriated to the receiving agency for particular programs." 64 Comp. Gen. 370, 380 (1985).[2]

There are several recognized exceptions to the rule against non-reimbursable details. First, there is a de minimis exception for details that have a negligible effect on the loaning agency's appropriations. *See* 65 Comp. Gen. 635, 637 (1986). Second, non-reimbursable details are permissible if the detail involves a matter related to the loaning agency's appropriations and which would aid the loaning agency in accomplishing the objects of its appropriations. *Id.; see also* 64 Comp. Gen. at 380. Third, Congress may expressly permit non-reimbursable details in certain instances. *See, e.g.,* 5 U.S.C. § 3343 (authorizing details to international organizations).

We believe that non-reimbursable details to the independent counsel are permissible in this case under the second exception. In this regard, the IRS concedes that non-reimbursable details are appropriate "to the extent that IRS employees are assigned to investigations concerning violations of the internal revenue laws." Memorandum for Associate Chief Counsel (Litigation) from Director, General Legal Services Division at 2 (Sept. 23, 1987). This is so because the IRS is appropriated funds for "necessary expenses of the Internal Revenue Service for investigation and enforcement activities." Act of Dec. 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, 1329–395. *Accord* Act of Oct. 30, 1986, Pub. L. No. 99–591, § 101(m), 100 Stat. 3341, 3341–312.

We have examined your letter to Mr. Brennan and agree that it is reasonable to conclude that the IRS agents detailed to the independent counsels would appear to be working on matters related to the IRS appropriation. Under the agreement, IRS employees are "to perform assigned financial investigative activities, including tracing of funds and net worth computations." Memorandum of Understanding between the Internal Revenue Service and the Office of Independent Counsel at 1 (Mar. 6, 1987) ("MOU"). As you noted in your letter to Mr. Brennan:

> At our meeting with you on September 29, 1987, Anthony Langone, Assistant Commissioner for Criminal Investigations, IRS, confirmed that to the best of his knowledge this was in fact the type of work performed by the IRS employees in this investiga-

---

[2] The Comptroller General is an officer of the legislative branch, *see Bowsher v. Synar,* 478 U.S. 714, 727–32 (1986), and, historically, the executive branch has not considered itself bound by the Comptroller General's legal opinions if they conflict with the legal opinions of the Attorney General or of this Office. However, the opinions do supply valuable guidance and, in this instance, the Comptroller General's construction of appropriations law is not inconsistent with our reading of the law.

tion. By its very nature, this type of work tends to uncover violations of the revenue laws to the extent that they may be present. . . . [I]n a recent telephone conversation, the Independent Counsel's Office confirmed that the work of the IRS employees, at least in part, involved tax related matters.

In light of these facts, we believe there is a reasonable basis to conclude that the work of the IRS employees for the independent counsel was in furtherance of an IRS appropriation.

Letter for the Honorable Charles H. Brennan, Deputy Commissioner—Operations, Internal Revenue Service, Department of the Treasury from Harry H. Flickinger, Assistant Attorney General for Administration at 2 (Sept. 30, 1987) ("Flickinger Letter"). Indeed, the work of the independent counsel produced an indictment against former Lieutenant Colonel North and others for conspiracy to defraud the IRS. *United States v. Poindexter*, No. 88–80 (D.D.C. Jan 28, 1987) (count twenty-three of the indictment). It therefore seems evident that at least some of the work done by IRS agents was in aid of the IRS' objective of investigating violations of the tax laws and supporting enforcement activity against violators. Therefore, the IRS should not insist upon reimbursement where the facts indicate the work was in support of the mission of the IRS.[3]

The third exception to the general rule—explicit congressional authorization for non-reimbursable details—does not seem to apply in this case, although there are legislative statements contemplating non-reimbursement under the second exception discussed above. An independent counsel may request assistance during an investigation pursuant to 28 U.S.C. § 594(d)(1):

An independent counsel may request assistance from the Department of Justice in carrying out the functions of the independent counsel, and the Department of Justice shall provide that assistance, which may include . . . the resources and personnel necessary to perform [the] independent counsel's duties.

Obviously, this provision does not expressly permit federal agencies to detail agents to an independent counsel on a non-reimbursable basis. Indeed, the provision only states that an independent counsel may obtain assistance from the Department of Justice—it does not address the issue of how the independent counsel may obtain assistance from other federal agencies or on what basis such assistance should be provided. Nor is the legislative history of the Ethics in Gov-

---

[3] Indeed, to require reimbursement for activities within an agency's mandate may, under some circumstances, constitute an improper augmentation of funds. As you stated in your letter of September 30, 1987 to Mr. Brennan, "[i]t would be an authorized augmentation of the IRS appropriations for the IRS to be reimbursed for work that Congress intended to fund out of an IRS appropriation." Flickinger Letter at 1–2. *See also* United States Government Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law* 5–62 to 5–63 (1st ed. 1983).

ernment Act of 1978, Pub. L. No. 95–521, § 601(a), 92 Stat. 1824, 1869–70, the origin of section 594(d), helpful. The 1978 legislative history does anticipate that an independent counsel may need assistance from other agencies, but the legislative history does not address the specific issue of whether such assistance is to be provided on a reimbursable basis. *See* H.R. Rep. No. 1307, 95th Cong., 2d Sess. 9 (1978) ("When requested, the Justice Department must also furnish the special prosecutor with resources and personnel needed by the special prosecutor in order to perform his duties."); S. Rep. No. 170, 95th Cong., 1st Sess. 68 (1977) ("The special prosecutor may choose to hire his own investigators or may choose to make some use of the Federal Bureau of Investigation or other federal investigation services. . . . If the special prosecutor requests the services of the Federal Bureau of Investigation or any federal investigative service, the Department of Justice is directed to provide the personnel and resources needed.").

Legislative statements accompanying the 1987 amendments to the independent counsel statute do provide, however, some evidence of Congress' desire to have assistance provided to an independent counsel on a non-reimbursable basis. Even though section 594(d)(1) was not changed when Congress reauthorized the independent counsel statute in 1987, a Senate report explained that section 594(d)(1) "enables [the independent counsel], standing in the shoes of the Attorney General, to request assistance from other investigative agencies *such as the Internal Revenue Service*, Secret Service, Inspectors General and Customs Service, which routinely assist the Department of Justice with its criminal investigations." S. Rep. No. 123, 100th Cong., 1st Sess. 23 (1987) (emphasis added). The report then observes:

> [T]he Internal Revenue Service (IRS) has recently demanded that an independent counsel sign a reimbursement agreement to use IRS investigative agents, even though it appears the IRS does not demand similar reimbursement from the Justice Department for the assistance of such agents with other criminal cases. Reimbursement appears particularly inappropriate since these agents will presumably be performing IRS work—investigating federal tax fraud.

*Id.* at 23. The report adds that "Congress . . . intended other investigative agencies to provide assistance to independent counsels . . . on the same nonreimbursable basis available to [the Justice] Department. . . . [F]ederal agencies are instructed to discontinue the practice of requiring reimbursement agreements mandated by [section 594(d)]." *Id.*

The unmistakable inference from this discussion is that the IRS should not require reimbursement for assistance it provides to the independent counsel, if it would not require similar reimbursement from the Department of Justice. Since IRS assistance to the Department would normally be non-reimbursable where the assistance advanced the mission of the IRS, these legislative statements suggest,

236

but do not obligate,[4] that the IRS should treat details to an independent counsel in a similar fashion.

## Conclusion

We believe that the IRS should not insist upon reimbursement from an independent counsel for the services of IRS agents to the extent that the portion of the work being done by the agents is related to the type of work for which the IRS receives its appropriations. This is consistent with longstanding appropriations law and principles and coincident with legislative statements which suggest that these principles should be observed with respect to the independent counsel, just as they are with the Department of Justice. For all non-IRS-related work done by the detailed agents, however, the general rule requiring reimbursement would appear to apply.

DOUGLAS W. KMIEC
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[4] There are two reasons why the 1987 Senate committee report cannot obligate the IRS as a matter of law. First, the report language that instructs federal agencies to discontinue all reimbursement agreements is not part of the statute. Committee reports are not statutes and they need not be treated as such. *See TVA v. Hill*, 437 U S 153, 191 (1978), 55 Comp. Gen. 812, 819–20 (1976); Reed Dickerson, *The Interpretation and Application of Statutes* 143–45 (1975) Legislative intent is ineffective unless it is embodied in the words of the statute. *See Commissioner v Acker*, 361 U.S. 87, 92–93 (1959)

Second, even though one might ordinarily review the legislative history of a statute to discern the meaning of an ambiguous provision, post-enactment legislative history generally is entitled to little weight This is especially true when the history is found in a committee report written several years after Congress enacted the statute. *See Oscar Mayer & Co v Evans*, 441 U.S. 750, 758 (1979) (The Senate report "was written 11 years after the [act] was passed in 1967, and such '[l]egislative observations . are in no sense part of the legislative history.'") (quoting *United Airlines v McMann*, 434 U.S. 192, 200 n.7 (1977)). In this case, Congress did not change section 594(d)(1) in 1987, so the discussion of non-reimbursable details is not related to any statutory action taken by Congress. Nevertheless, the Senate Committee on Governmental Affairs obviously favored non-reimbursable details to the independent counsels, and to the extent appropriations law and principles coincide with this stated reference, they should be pursued.