UNION UNDERWEAR COMPANY, INC., d/b/a Fruit of the Loom Appellant

v.

Joel O. BARNHART; Zack N. Womack; Deep & Womack; Andrew P. Campbell; Dave Loper; and Leitman, Siegal, Payne & Campbell, P.C. Appellees

No. 1999–SC–0091–DG.

Supreme Court of Kentucky.

April 26, 2001.

Rehearing Denied Aug. 23, 2001.

Richard S. Cleary, Brent R. Baughman, Greenebaum, Doll & McDonald, Louisville, Counsel for Appellant.

Zack N. Womack, Womack Law Offices, Henderson, John C. Roach, Ransdell, Roach & Wier, P.L.L.C., Lexington, Andrew P. Campbell, Dave Loper, Leitman, Siegal, Payne & Campbell, P.C., Birmingham, AL, Counsel for Appellees, Joel O.

Barnhart; Zack N. Womack; Deep & Womack; Andrew P. Campbell, Dave Loper; and Leitman, Siegal, Payne & Campbell, P.C.

Douglas W. Becker, David A. Calhoun, Wyatt, Tarrant & Combs, Louisville, Counsel for Amicus Curiae, Associated Industries of Kentucky.

JOHNSTONE, Justice.

After being dismissed from his employment, Barnhart brought suit against Union Underwear Co., Inc. (d/b/a Fruit of the Loom), in April 1995, alleging that he had been illegally discharged because of his age in violation of KRS 344.040(1). The jury found in favor of Barnhart and recommended compensatory damages in the amount of $250,000 and punitive damages in the amount of $750,000. The trial court entered judgment against Fruit of the Loom accordingly. Fruit of the Loom appealed to the Court of Appeals, which affirmed the judgment of the trial court. We granted discretionary review and reverse.

Fruit of the Loom is incorporated in New York and maintains its headquarters in Bowling Green, Kentucky. At all times relevant to this appeal, Barnhart resided and was employed outside of the Commonwealth of Kentucky. In addition to a number of other arguments, Fruit of the Loom maintains that the Warren Circuit Court lacked subject-matter jurisdiction over Barnhart's claims because Barnhart is not covered by the protections of the Kentucky Civil Rights Act (KCRA).

■ Subject-matter jurisdiction usually refers to a court's power to hear this kind of case rather than the court's power to hear a particular case. *Duncan v. O'Nan*, Ky., 451 S.W.2d 626, 631 (1970). Clearly, the Warren Circuit Court is empowered to hear this type of case, that is,

an employment discrimination case brought under the KCRA. KRS 344.450.

■ There is an exception to the general rule which addresses a court's jurisdiction over a particular case. *See Milby v. Wright,* Ky., 952 S.W.2d 202, 205 (1997). This is a limited exception and does not appear to apply to the case at bar. While we disagree with Fruit of the Loom that the trial court lacked subject-matter jurisdiction over this case, we do agree that the KCRA does not apply to Barnhart because it would be an extraterritorial application of the Act. Further, this was the basis that was presented in support of Fruit of the Loom's motion to dismiss for failure to state a claim upon which relief can be granted. The trial court erred when it failed to grant this motion.

## WHETHER THE KCRA HAS EXTRATERRITORIAL APPLICATION

Barnhart's only connection to Kentucky is that Fruit of the Loom is his employer which has its headquarters in Kentucky. During all relevant periods, Barnhart was living and working in either Alabama or South Carolina. He was employed in South Carolina when he was dismissed from his job. Any discrimination against Barnhart occurred in South Carolina, or alternately, in Alabama. Thus, the question we must answer is whether the KCRA has extraterritorial application. *Accord Equal Employment Opportunity Commission v. Arabian American Oil Co.,* 499 U.S. 244, 247, 111 S.Ct. 1227, 113 L.Ed.2d 274, 281 (1991) (sole issue at bar was whether Title VII of the 1964 Civil Rights Act had an extraterritorial application to a naturalized citizen working in a foreign country who worked for an American corporation).

■ We begin our analysis with the well-established presumption against ex-

traterritorial operation of statutes. That is, unless a contrary intent appears within the language of the statute, we presume that the statute is meant to apply only within the territorial boundaries of the Commonwealth. 73 Am.Jur.2d, *Statutes,* § 359 (1974). This rule of construction helps to protect against unintended clashes of the laws of the Commonwealth with the laws of our sister states. *See McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 20–22, 83 S.Ct. 671, 9 L.Ed.2d 547, 554–55 (1963).

The General Assembly is obviously aware of the presumption against extraterritorial application and how to overcome it. For example, the legislature expressly provided for the extraterritorial application of the Workers' Compensation Act in KRS 342.670, which provides in pertinent part:

Extraterritorial coverage.—(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he ... would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee ... shall be entitled to the benefits provided by this chapter, provided that at the time of such injury:

(a) His employment is principally localized in this state, or

(b) He is working under a contract of hire made in this state in employment not principally localized in any state, or

(c) He is working under a contract of hire made in this state in employment principally localized in another state whose workers' compensation law is not applicable to his employer, or

(d) He is working under a contract of hire made in this state for employment outside the United States and Canada.

There is no comparable provision for extraterritorial application in the KCRA.

Moreover, nothing in the Act implies that it was intended to operate beyond Kentucky's borders. In fact, the language of the Act indicates otherwise. KRS 344.020(1)(b) provides in pertinent part that the purpose of the Act is to "safeguard all individuals *within the state* from discrimination ...." (Emphasis added). Thus, we will not infer the extraterritorial reach of the KCRA absent a positive showing by Barnhart that the General Assembly intended that the Act be applied extraterritorially.

■ First, Barnhart's argument that if the General Assembly intended that the KCRA should not apply extraterritorially, it could have said so, must fail. It is not Fruit of the Loom which has to show lack of extraterritorial application. Rather, it is Barnhart who must positively show the legislative intent that the KCRA is to be applied extraterritorially.

Next, KRS 344.030(2) makes Fruit of the Loom an "employer" for the purposes of KRS 344.030 to 344.100 and a "person" within the meaning of KRS 344.010. KRS 344.040(5) defines "employee" as an "individual employed by an employer...." Finally, KRS 344.040 makes it unlawful practice for an employer to:

> Fail or refuse to hire, or discharge, *any individual* with respect to compensation, terms, conditions or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over ....

(Emphasis added).

■ Barnhart argues that the use of the term "any individual" in KRS 344.040 evinces a legislative intent that the KCRA has extraterritorial application. We disagree. Under the presumption against extraterritorial application, the use of the terms "any" or "all" to persons covered by the legislation does *not* imply that the enacting legislature intended that the legislation be applied extraterritorially. 73 Am.Jur.2d, Statutes, § 359 (1974).

Barnhart further argues that Fruit of the Loom is an employer covered by the Act and he is an employee within the meaning of the Act; thus, Fruit of the Loom is liable for any discriminatory acts against him that are prohibited by the Act. While appealing, the argument does not overcome Barnhart's burden of making a positive showing that the General Assembly intended that the Act apply extraterritorially.

The United States Supreme Court rejected similar arguments in *Equal Employment Opportunity Commission v. Arabian American Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). The Equal Employment Opportunity Commission (EEOC) argued that the language of the Act evinced a clear intent that it be applied extraterritorially. *Id.* at 248–49, 111 S.Ct. at 1230–31, 113 L.Ed.2d at 282–83. The EEOC relied in part on the applicable definition of "employer" contained in Title VII. Specifically, the EEOC argued that: (1) an employer was defined in part as being "engaged in an industry affecting commerce;" (2) "commerce" in part was defined as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof ....;" and (3) through use of the language "any place outside thereof," Congress purposefully intended Title VII to apply to foreign jurisdictions. *Id.* at 249–50, 111 S.Ct. at 1230–31, 113 L.Ed.2d at 283. The argument was rejected.

■ While finding the EEOC's argument plausible, the *Arabian American Oil* Court concluded that the EEOC had not met its burden of making an affirmative showing that Congress intended that the Civil Rights Act of 1964 apply extraterrito-

rially. *Id.* at 253, 111 S.Ct. at 1232, 113 L.Ed.2d at 285. The Court noted that the language was ambiguous—referring to it as boilerplate—and did not speak directly to the issue presented. "If we were to permit possible, or even plausible, interpretations of language such as that involved here to override the presumption against extraterritorial application, there would be little left of the presumption." *Id.* Likewise, we hold that the language of the Act relied on by Barnhart does not show that the General Assembly intended that the KCRA be applied extraterritorially. Moreover, unlike acts of Congress, there can be no assumption that the Commonwealth has the power to enforce its laws beyond its borders. *See id.* at 248, 111 S.Ct. at 1230, 113 L.Ed.2d at 283 (both parties conceded that Congress has the power to enforce its laws beyond the territorial boundaries of the United States). This gives us even greater reason to be cautious when determining whether a law of the Commonwealth should be applied extraterritorially.

Barnhart also argues that public policy favors extraterritorial application of the KCRA. In particular, he argues that extraterritorial application furthers the goal of national cooperation in eliminating discrimination. To deny extraterritorial application, according to Barnhart, is to allow Kentucky employers to escape punishment for acts of invidious discrimination. Again, we disagree.

■ The relevant portion of the KCRA was enacted to "provide for execution within the state of the policies embodied in ... the Federal Age Discrimination in Employment Act [ADEA] of 1967 ...." KRS 344.020(1)(a). In so doing, the legislature created both administrative and civil remedies for persons discriminated against because of their age. The right to these remedies are in addition to those established in the ADEA. The "ADEA permits concurrent rather than sequential state and federal administrative jurisdiction in order to expedite the processing of age-discrimination claims." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609, 615 (1979). Barnhart has, or had, forums for relief other than Kentucky courts. Thus, our holding does not let Fruit of the Loom "off the hook" and give it free reign to discriminate against its out of state workers.[1]

Moreover, extraterritorial application of the KCRA would likely hinder rather than promote the elimination of discrimination on a national basis. Congress enacted the ADEA in order to eliminate age-based discrimination on a national level. The individual states can and are encouraged to enact their own versions of the ADEA. *See* 29 U.S.C.A. § 633. Many states, such as Kentucky, have enacted such legislation. Such legislation can only be viewed as providing additional protection from age-based discrimination. *Accord Nickel v. Shatterproof Glass Corp.,* 424 F.Supp. 884, 886 (D.Mich.1976). There certainly is no guarantee that any additional protection provided by the various states will be uni-

---

1. We note that when the ADEA was initially enacted by Congress, it was construed by a majority of federal courts as expressly having no extraterritorial application. *See, e.g., Pfeiffer v. Wm. Wrigley Jr. Co.,* 755 F.2d 554, 559 (7th Cir.1985). However, an exception to this rule was created to prevent "a transparent evasion of the Act, as where an employer transfers an employee abroad for a short period of time for the purpose of avoiding the Act's coverage." *Wolf v. J.I. Case Co.,* 617 F.Supp. 858, 861 (E.D.Wis.1985). Further, we also note that there is liberal policy for protecting workers who suffer injury *within* the territorial boundaries of the Commonwealth. *See, e.g., Bryant v. Jericol Mining, Inc.,* Ky.App., 758 S.W.2d 45 (1988).

form. In fact, it is highly unlikely that it would be.

The extraterritorial application of one state's legislation to prevent age-based discrimination upon the employment practices of another state could result in competing jurisdictions and difficult choice of law questions, all of which would delay rather than expedite the disposition of age-based discrimination cases. Such a result would be contrary to one of the ADEA's primary purposes, which is the expeditious disposition of cases. Expediency is particularly important in these type of cases because those aggrieved by acts of age-based discrimination by definition have relatively fewer productive years left. *Oscar Mayer & Co. v. Evans,* 441 U.S. at 757, 99 S.Ct. at 2072, 60 L.Ed.2d at 616, quoting 113 Cong. Rec. 7076 (1976) (remarks of Sen. Javits).

■ We conclude by noting that the decision by a state to provide additional protection against age-based discrimination in employment is a policy decision of that state. Imposing the policy choice by the Commonwealth on the employment practices of our sister states should be done with great prudence and caution out of respect for the sovereignty of other states, and to avoid running afoul of the Commerce Clause of the United States Constitution. "The Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.,* 457 U.S. 624, 642–43, 102 S.Ct. 2629, 2640–41, 73 L.Ed.2d 269, 283 (1982) (plur.opn.); *see also Campbell v. Arco Marine, Inc.* 42

Cal.App.4th 1850, 50 Cal.Rptr.2d 626, 631–32 (1996), which held that extraterritorial application of California's Fair Employment Housing Act would raise serious constitutional concerns under the Commerce Clause.

■ For the reasons set forth above, we hold that the Kentucky Civil Rights Act does not have extraterritorial application. Further, we hold that, upon the facts of this case, allowing Barnhart to obtain relief under the KCRA is an extraterritorial application of the Act. Therefore, we reverse the Court of Appeals and remand this case with directions to enter an order dismissing this complaint.

COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion, with KELLER and STUMBO, JJ., joining that dissent.

LAMBERT, Chief Justice, dissenting.

The opinion of the majority improperly circumscribes the jurisdiction of Kentucky courts and undermines important state and federal policy. It is truly extraordinary for a Kentucky court to hold that it lacks subject matter jurisdiction of a claim for Kentucky Civil Rights Act violations committed against its employees by a Kentucky corporation.[1]

Circuit courts "have original jurisdiction of all justiciable causes not vested in some other court."[2] "The circuit court is a court of general jurisdiction; it has original jurisdiction of all justiciable causes not

---

1. While Fruit of the Loom is incorporated in New York, its principal place of business is in Bowling Green. Barnhart reported directly to the company headquarters in Bowling Green and the decision to demote Barnhart because of his age was made and approved at

corporate headquarters in Bowling Green. In sum, every decision that gives rise to Barnhart's claim occurred at corporate headquarters in Bowling Green.

2. KY. CONST. § 112(5).

*exclusively* vested in some other court." [3] Under these provisions, Kentucky circuit courts, unlike their federal counterparts that require an express grant of jurisdiction, are granted subject matter jurisdiction in all cases except where it is expressly denied. As such, the focus of the majority opinion on whether the trial court was granted jurisdiction is misplaced; the inquiry should be whether jurisdiction has been denied. Nothing in the Act remotely constitutes an express denial of subject matter jurisdiction. [4]

The fundamental basis for the majority opinion is found in language from the general purposes provision of the Act which refers to protection of "individuals within this state." [5] To reach its conclusion, however, there has been a tortured reading of the entire general purposes section and disregard of the first sentence, "to provide for execution within the state *of the policies* embodied in the Federal Civil Rights Act of 1964 ..." (emphasis added). Other provisions of the Act remove any doubt as to legislative intent that all persons employed by an employer subject to the Act are covered. KRS 344.030(5) defines "employee" as "an individual employed by an employer," and KRS 344.450 states, "any person injured by any act in violation of this chapter shall have a civil cause of action in circuit court ...." Moreover, application of the Act by the majority leads straightaway to inconsistent treatment of corporate employees working in Kentucky and those who work in another state. The majority should have been guided by KRS 446.080 which requires that statutes "be liberally construed with a view to promote their objects and carry out the intention of the legislature, and the rule that statues in derogation of the common law are to be strictly construed shall not apply to the statutes of this state."

The most pernicious effect of the majority opinion is that it undermines compelling state and federal policy. The Act (KRS 344, *et. seq.*) Is intended to encompass and guarantee under state law the provisions of the Federal Civil Rights Act of 1964, Title VIII of the Federal Civil Rights Act of 1968, the Fair Housing Act as amended (42 USC 360), the Federal Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, and the Civil Rights Act of 1991 as amended. [6] With the majority opinion here, these paramount rights have been thwarted. Rights available to an employee within Kentucky are wholly denied to an employee of the same corporation who is directed by the employer to work outside this state, despite the fact that all relevant decisions were made in Kentucky.

As the majority opinion is predicated entirely upon lack of subject matter jurisdiction, it found no need to address numerous other significant issues presented in this case. This record should reflect, however, that the case was tried before a jury that found Fruit of the Loom had discharged Barnhart "because of his age" and returned a verdict in excess of one million dollars. Judgment for that sum plus attorneys' fees was entered by the trial court. It should also be said that the Court of Appeals panel hearing the case was unanimous and rendered a scholarly

---

**3.** KRS 23A.010 (emphasis added).

**4.** *Compare* KRS 24A. 110 and KRS 24A. 120, whereby the criminal and civil jurisdiction of district courts is articulated, thereby depriving circuit courts of jurisdiction in such circumstances.

**5.** KRS 344.020(1).

**6.** *Meyers v. Chapman Printing Co.*, Ky., 840 S.W.2d 814 (1992).

opinion of forty-seven pages affirming the final judgment.

KELLER and STUMBO, JJ., join this dissenting opinion.