**Charles W. HECKMAN, Plaintiff,**

v.

**UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Defendant.**

**No. 1:97CV00184.**

United States District Court,
M.D. North Carolina.

Aug. 11, 1998.

Charles W. Heckman, plaintiff pro se.

Sylvia Hargett Thibaut, Raleigh, NC, for defendant.

### MEMORANDUM OPINION

BEATY, District Judge.

This action comes before the Court on Defendant's Motion to Dismiss [Document # 12] and Motion to Dismiss Amendment to the Complaint [Document # 23]. For the reasons stated herein, Defendant's motions are granted and this action is dismissed in its entirety.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

This action arises out of a *pro se* Complaint filed by Plaintiff Charles W. Heckman against Defendant, the University of North Carolina ("UNC") at Chapel Hill, on March 5, 1997. Plaintiff alleges that, by rejecting Plaintiff's application for employment, Defendant discriminated against him on the basis of his age and on the basis of his status as a veteran of the Vietnam War. As the legal background for Plaintiff's claims in this instance, Plaintiff's original Complaint includes references to (1) 29 U.S.C. § 623 *et seq.*, which is the Age Discrimination in Employment Act ("ADEA"),[1] (2) 42 U.S.C. § 6101 *et seq.*, which is the Age Discrimination Act of 1975 ("ADA"),[2] (3) 42 U.S.C. § 2000e,[3] (4) the

---

1. The ADEA prohibits discrimination in employment on the basis of age. *See, e.g.,* 29 U.S.C. § 623(a)(1).

2. The ADA provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.

3. Section 2000e of title 42 contains the definitions of terms which are used within Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin." *E.g.,* 42 U.S.C. § 2000e-2(a)(1). In this matter, Plaintiff does not allege that he was discriminated against on the basis of any Title VII factor. It therefore appears to the Court that Plaintiff is not asserting a separate Title VII

Fourteenth Amendment of the United States Constitution, and (5) 38 U.S.C. §§ 2000 and 2012, which are provisions of the Vietnam Era Veterans' Readjustment Assistance Act ("VRA") and which have been recodified as 38 U.S.C. §§ 4100 and 4212.[4] (See Compl. ¶¶ 3–4.) Plaintiff alleges in his Complaint that he applied for a tenure-track position in Defendant's Department of Biological Sciences but that Defendant unlawfully excluded him from further consideration at the beginning of the selection process. (See id. ¶ 4.) Plaintiff alleges that Defendant's Department of Biological Sciences has never hired anyone over the age of fifty and has never hired a Vietnam War veteran for a tenured or tenure-track position. With respect to the specific position for which Plaintiff applied, Plaintiff alleges that Defendant gave serious consideration and interviews only to applicants who were substantially younger than Plaintiff and who had not served in the United States' armed forces. (See id.) In addition, Plaintiff maintains that the applicant who was chosen for the position in the Department of Biological Sciences was over ten years younger than Plaintiff and, when compared with Plaintiff, had "markedly inferior qualifications" in terms of his total years of experience in teaching and research and in terms of his scientific productivity. (Id.; see also "Table" attached to the Compl.) As support for the allegation that age had a role in Defendant's rejection of Plaintiff's application, Plaintiff states in the Complaint that members of the selection committee told the Equal Employment Opportunity Commission ("EEOC") that Plaintiff would not have been able to develop a long-term research program—an explanation which Plaintiff contends was a reference to the number of years he might be willing to work in light of his age. (See Compl. ¶ 4.)

With respect to Plaintiff's status as a Vietnam War veteran, Plaintiff alleges that, because Defendant has a contract with the federal government from which Defendant receives over $10,000 in government funds each year, Defendant had a statutory obligation under the VRA to provide an affirmative action program for Vietnam War veterans. (See Compl. ¶¶ 2, 4) (citing 38 U.S.C. §§ 2000, 2012). Based upon the fact that Plaintiff's application was not considered beyond the first stage[5] of Defendant's selection process, Plaintiff contends that Defendant failed to satisfy its affirmative action obligations under the VRA. (See id. ¶ 4.) As relief for the alleged violations of federal law, Plaintiff seeks damages in the amount of $250,000 and injunctive relief in the form of an order which prohibits Defendant from receiving any federal funds until its hiring practices are modified both to eliminate discrimination and to grant "statutory affirmative action rights to veterans." (Id. ¶ 5.)

Defendant moved to dismiss Plaintiff's Complaint on June 3, 1997. However, on June 16, 1997, Plaintiff moved to amend his Complaint to include a reference to the ADA, to 42 U.S.C. § 2000d–7 and the Fourteenth Amendment,[6] and to the recodified provisions

---

claim in this case. Nevertheless, to the extent that Plaintiff's citation of § 2000e might be read as an attempt to assert a Title VII claim, the Court finds that, based upon Plaintiff's failure to allege any facts concerning any of the Title VII factors, such claim can be dismissed for failure to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6).

**4.** The VRA provides in relevant part that those who enter into a contract in the amount of $10,-000 or more with an agency or department of the United States will be required to "take affirmative action to employ and advance in employment qualified ... veterans of the Vietnam era." 38 U.S.C. § 4212(a).

**5.** Out of the 315 applicants who applied for the position, Plaintiff was among the 284 applicants who were rejected in the first stage of the selection process. Only thirty-one applicants received additional consideration by the selection committee and only five applicants were offered interviews. (See Def.'s Br. in Supp. of Mot. to Dismiss [Doc. # 13] Ex. B at 2; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss [Doc. # 26] at 8.)

**6.** Plaintiff sought to add references to 42 U.S.C. § 2000d–7 and the Fourteenth Amendment because of Defendant's argument that some of Plaintiff's claims should be dismissed on the basis of Eleventh Amendment immunity. (See Pl.'s Notice of Mot. to Amend Compl. [Doc. # 15] at 1; Def.'s Br. in Supp. of Mot. to Dismiss [Doc. # 13] at 7–11.) Section 2000d–7 states in pertinent part that "[a] State shall not be immune under the Eleventh Amendment ... from suit in Federal Court for a violation of" the ADEA. 42 U.S.C. § 2000d–7(a)(1). Moreover, Plaintiff appears to argue that the adoption of the Fourteenth Amendment resulted in a waiver or abro-

of the VRA, particularly 38 U.S.C. § 4212. (*See* Pl.'s Notice of Mot. to Amend Compl. [Doc. # 15] at 1.) Plaintiff also sought to amend his Complaint to include the following additional claim:

> It is further demanded that all those state laws of North Carolina giving the State University and other state-administered institutions exceptions to the state's Veterans' Preference Employment Statute [sic] be voided on the grounds that they deny eligible veterans equal treatment guaranteed by Amendment 14 of the Contitution [sic] of the United States of America.

(*Id.*) At a pretrial conference held on June 30, 1997, the Court granted Plaintiff's Motion to Amend the Complaint but declined to consider further Defendant's Motion to Dismiss until after Defendant filed an amended motion to dismiss in light of the amendment to Plaintiff's Complaint. Hence, on July 2, 1997, Defendant filed a Motion to Dismiss Amendment to the Complaint, contending that the Complaint as amended should be dismissed for the same reasons that were asserted in Defendant's first motion. Based upon the briefs and other documents which the parties filed in connection with both Defendant's original Motion to Dismiss and Defendant's Motion to Dismiss Amendment to the Complaint, the Court is now prepared to rule on the issues raised by Defendant's two motions.

## II. STANDARD OF REVIEW.

Defendant contends in the motions before this Court that Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction, *see* Fed.R.Civ.P. 12(b)(1), lack of jurisdiction over the person, *see* Fed.R.Civ.P. 12(b)(2), and failure to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). With respect to jurisdiction, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that " '[f]ederal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress. The burden is on the party asserting

the jurisdiction of the court to show that jurisdiction does, in fact, exist.' " *Goldsmith v. Mayor & City Council,* 845 F.2d 61, 63–64 (4th Cir.1988) (quoting *Bowman v. White,* 388 F.2d 756, 760 (4th Cir.1968)) (discussing subject-matter jurisdiction specifically); *see also Owens–Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.),* 124 F.3d 619, 628 (4th Cir.1997) (stating that a plaintiff has the burden of establishing grounds for jurisdiction over the person).

With respect to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a dismissal should be allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). Generally, a court should not dismiss a complaint for failure to state a claim "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Moreover, when a plaintiff appears in a case *pro se,* such as Plaintiff here, the complaint is to be judged by "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652, 654, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). However, because the primary objective of Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims, a court is not bound by any legal conclusions that are included in the complaint. *See Randall,* 30 F.3d at 522.

## III. DISCUSSION.

Defendant argues that each of the claims which Plaintiff purports to assert in the

gation of states' Eleventh Amendment immunity such that the Eleventh Amendment cannot bar claims brought under the Fourteenth Amendment. The Court will discuss these Eleventh Amendment issues below only to the extent such discussion is necessary to resolve Defendant's motions.

Complaint should be dismissed as a matter of law. The Court will address below each of those claims and will discuss Defendant's arguments with respect to those claims to the extent such discussion is necessary to resolve Defendant's motions.

### A. Plaintiff's References in the Complaint to the VRA.

First, with respect to Plaintiff's reference in the Complaint to the VRA's affirmative action requirements, Defendant contends that Plaintiff has failed to state a claim upon which relief may be granted. In response, Plaintiff argues that he does not rely upon the VRA as a separate cause of action but that he only seeks to use Defendant's alleged noncompliance with the VRA as evidence that Defendant discriminated against him. To the extent that Plaintiff's Complaint cites the provisions of the VRA, alleges that Defendant violated the VRA, and seeks injunctive relief which would require Defendant to modify its hiring practices to grant "affirmative action rights to veterans," (*see* Compl. ¶¶ 4–5), the Court finds that the Complaint could be read to include a VRA claim and that, despite Plaintiff's argument to the contrary, Defendant's position on this point should be considered. In any event, as emphasized by Defendant, it has already been held by a number of courts that the VRA does not provide Vietnam War veterans with any private right of action. *See Harris v. Adams*, 873 F.2d 929, 931–32 (6th Cir.1989); *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20, 21–22 (1st Cir.1988); *Wilson v. Amtrak Nat'l R.R. Corp.*, 824 F.Supp. 55, 58 (D.Md.1992). Therefore, to the extent that a VRA claim is within the scope of Plaintiff's Complaint, the Court concludes that such claim must be dismissed for failure to state a claim upon which relief may be granted.

### B. Plaintiff's ADEA Claim.

Turning to Plaintiff's claim under the ADEA, Defendant argues, *inter alia*, that because Plaintiff failed to comply with the administrative prerequisites for an ADEA claim, Plaintiff's claim must be dismissed for lack of subject-matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1350, at 195 (1990) (stating that a plaintiff's failure to exhaust prerequisite, administrative remedies is properly raised on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction). Specifically, Defendant contends that Plaintiff failed to comply with the requirements of 29 U.S.C. § 633(b). Section 633(b) provides in pertinent part as follows:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, *no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.* . . .

29 U.S.C. § 633(b) (emphasis added). In the instant matter, Plaintiff was required to commence state proceedings prior to filing his ADEA claim in federal court because (1) North Carolina has a law which prohibits employment discrimination on the basis of age, *see* N.C.Gen.Stat. § 126–16 (1995),[7] and (2) North Carolina has authorized its Office of Administrative Hearings ("OAH") to process any age discrimination claims that are brought by employees or applicants for employment with the State. *See* N.C.Gen.Stat. § 7A–759 (1995) (designating the OAH as the agency to process cases which are "deferred" by the EEOC because of the state proceeding requirement of the ADEA); N.C. Admin.Code tit. 26, r. 4.0001–4.0010 (Aug.1997) (setting forth the duties, powers, and responsibilities of the OAH with respect to "deferred charges").

The Court notes that Plaintiff has not alleged or produced any evidence to demonstrate that he has complied with § 633(b). Instead, Plaintiff's only response to Defen-

---

**7.** Section 126–16 provides that "[a]ll State departments and agencies and all local political subdivisions of North Carolina shall give equal opportunity for employment and compensation, without regard to race, religion, color, creed, national origin, sex, *age*, or handicapping condition." N.C.Gen.Stat. § 126–16 (emphasis added).

dant's argument on this issue is his conclusory statement, that "[a] state investigation is optional, and if it is not specifically requested, statutory references to it are irrelevant." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss [Doc. #20] at 4.) However, in construing § 633(b), the United States Supreme Court has previously rejected an argument similar to Plaintiff's position here. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–58, 99 S.Ct. 2066, 60 L.Ed.2d 609, 615–17 (1979). In fact, reasoning that the purpose of § 633(b) is "to screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings," *see id.* at 756, 99 S.Ct. 2066, 60 L.Ed.2d at 616, the Supreme Court held in *Oscar Mayer* that § 633(b) *"mandates* that a grievant not bring suit in federal court under … the ADEA until he has *first* resorted to appropriate state administrative proceedings." *Id.* at 753, 99 S.Ct. 2066, 60 L.Ed.2d at 614 (emphasis added). Thus, based upon § 633(b), the holding in *Oscar Mayer*, and Plaintiff's failure to allege or demonstrate any compliance with the requirements of § 633(b), the Court finds that Plaintiff's ADEA claim must be dismissed for failure to comply with the administrative prerequisites for such a claim. *See Cornett v. AVCO Financial Servs.*, 792 F.2d 447, 449–50 (4th Cir.1986) (finding an ADEA suit to be "legally barred" because the plaintiff failed to commence proceedings with the relevant state agency).

### C. Plaintiff's ADA Claim.

■ Similar to its argument with respect to Plaintiff's ADEA claim, Defendant contends that Plaintiff's claim under the ADA must be dismissed for failure to comply with the statutory prerequisites for bringing such a claim. As provided by 42 U.S.C. § 6104(e), a claim under the ADA may be brought only under the following circumstances:

(1) When any interested person brings an action in any United States district court for the district in which the defendant is found or transacts business to enjoin a violation of this Act by any program or activity receiving Federal financial assistance, such interested person *shall give notice by registered mail not less than 30* *days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed . . . .*

(2) The notice referred to in paragraph (1) shall state the nature of the alleged violation, the relief to be requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded in the event that the plaintiff prevails. *No action described in paragraph (1) shall be brought … if administrative remedies have not been exhausted.*

42 U.S.C. § 6104(e) (emphasis added). In addition, as defined by the ADA, administrative remedies are not exhausted until 180 days have elapsed since the filing of an administrative complaint, during which time the relevant department or agency made no findings with respect to the complaint, or until the department or agency has made a finding in favor of the party who was alleged to have violated the ADA, whichever happens first. *See* 42 U.S.C. § 6104(f). In responding to Defendant's motions, Plaintiff has not contended that he satisfied the ADA requirements set forth in § 6104. Further, there is no evidence before this Court which indicates that Plaintiff notified the parties listed in § 6104(e) or even exhausted his administrative remedies under the ADA before filing the present lawsuit against Defendant. Therefore, the Court finds that Plaintiff's ADA claim must be dismissed for failure to comply with the prerequisites for filing such a claim.

### D. Plaintiff's Claims Based upon Violations of the Fourteenth Amendment.

Finally, in addition to the claims discussed above, Plaintiff asserts in the Complaint and the amendment to the Complaint two claims that are based upon alleged violations of the Fourteenth Amendment. Plaintiff's first claim, alleging that Defendant discriminated against him on the basis of his age, appears to be based upon the Equal Protection Clause of the Fourteenth Amendment. In the second Fourteenth Amendment claim, Plaintiff alleges that North Carolina law de-

nies him the right to equal treatment because such law exempts Defendant from the requirements of North Carolina's Veteran's Preference Statute. *See* N.C.Gen.Stat. § 126–80 (1995) (stating that "veterans shall be granted preference in employment for positions" in state departments, agencies, or institutions); N.C.Gen.Stat. §§ 126–5(c1)(8), 126–83 (1995 & Supp.1997) (providing the instructional and research staff of the University of North Carolina with an exemption from, *inter alia*, the Veteran's Preference Statute). Specifically, Plaintiff contends that the exemption violates the Fourteenth Amendment because it prevents veterans who wish to pursue academic careers with the state university from enjoying the benefits of an employment preference that other veterans have the right to enjoy. Based upon Plaintiff's description of this claim, it appears that this claim is also based upon the Equal Protection Clause.

▮ In urging the dismissal of Plaintiff's two equal protection claims, Defendant contends that, by virtue of the Eleventh Amendment, this Court lacks subject-matter jurisdiction over both claims. The law is clear that, in the absence of waiver or congressional abrogation, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67, 78 (1984) (citations omitted); *accord Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209, 225–26 (1986). In this instance, because Defendant is a state university in North Carolina, Defendant is entitled to enjoy the State's Eleventh Amendment immunity. *See Huang v. Board of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir.1990) (finding that the Eleventh Amendment bars a suit against the Board of Governors of UNC); *Bartges v. University of N.C. at Charlotte*, 908 F.Supp. 1312, 1332–33 (W.D.N.C.1995) (finding UNC at Charlotte to be immune under the Eleventh Amendment), *aff'd*, 94 F.3d 641, 1996

WL 460766 (4th Cir.1996); *Roberson v. Dale*, 464 F.Supp. 680, 689 (M.D.N.C.1979) (holding that Defendant here, UNC at Chapel Hill, is an "alter-ego" of the State).

However, in an attempt to avoid dismissal of his equal protection claims, Plaintiff argues that Defendant waived its Eleventh Amendment immunity by entering into a contract with the United States by which it would receive in excess of $10,000 each year. The United States Supreme Court has stated that a waiver of immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662, 678 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742, 751 (1909)) (alteration in original). "[T]he mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246–47, 105 S.Ct. 3142, 87 L.Ed.2d 171, 182 (1985). Plaintiff in this instance cannot point to anything other than Defendant's receipt of federal funds to support his argument that Defendant waived its Eleventh Amendment immunity. In addition, the Court can find no evidence offered by Plaintiff to indicate that the State has waived its immunity from suit in federal court. *Cf. Huang*, 902 F.2d at 1139 (finding that "North Carolina law nowhere specifically provides for waiver of Eleventh Amendment immunity"). Therefore, the Court finds that Plaintiff's waiver argument is without merit.

▮ Nevertheless, Plaintiff also seems to argue that, because his claims arise under the Fourteenth Amendment and because the Fourteenth Amendment was adopted and ratified several years after the Eleventh Amendment, Defendant cannot rely upon Eleventh Amendment immunity in this instance. Pursuant to section 5 of the Fourteenth Amendment,[8] it is well-settled that Congress has the authority to adopt legislation which abrogates a state's Eleventh Amendment immunity. *See Pennhurst*, 465

8. Section 5 provides that "Congress shall have power to enforce, by appropriate legislation, the

provisions of this" amendment. U.S. Const. amend. XIV, § 5.

U.S. at 99, 104 S.Ct. 900, 79 L.Ed.2d at 77. However, as interpreted by the Supreme Court, such abrogation only occurs when Congress "mak[es] its intention unmistakably clear in the language of [a] statute." *Atascadero,* 473 U.S. at 242, 105 S.Ct. 3142, 87 L.Ed.2d at 179. The United States Court of Appeals for the Second Circuit has found that the Fourteenth Amendment does not satisfy this "clear statement" requirement and that the Amendment does not, in and of itself, abrogate a state's Eleventh Amendment immunity, even when a plaintiff alleges a violation of the Fourteenth Amendment. *See Santiago v. New York State Dep't of Correctional Servs.,* 945 F.2d 25, 30–31 (2d Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). On the basis of this case law, the Court therefore finds that Plaintiff's argument on this point also fails. Accordingly, based upon Defendant's Eleventh Amendment immunity, the Court concludes that Plaintiff's equal protection claims must be dismissed for lack of subject-matter jurisdiction.[9]

## IV. CONCLUSION.

For the foregoing reasons, this Court concludes that Defendant's Motion to Dismiss and Motion to Dismiss Amendment to the Complaint are GRANTED. Moreover, because this ruling disposes of every claim which Plaintiff purported to assert in the Complaint, this action is hereby DISMISSED in its entirety. An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

*ORDER AND JUDGMENT*

For the reasons enumerated in the MEMORANDUM OPINION filed contemporaneously herewith, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Dismiss [Document # 12] and Motion to Dismiss Amendment to the Complaint [Document # 23] are GRANTED. Accordingly, this action against the University of North Carolina at Chapel Hill is DISMISSED in its entirety.

---

**9.** The Court notes that, as an additional ground for dismissing Plaintiff's equal protection claims, Defendant argues that Plaintiff has failed to state a claim upon which relief may be granted. The United States Court of Appeals for the Fourth Circuit has stated that a plaintiff "cannot bring a claim directly under the Fourteenth Amendment because it does not create a cause of action." *Hughes v. Bedsole,* 48 F.3d 1376, 1383 n. 6 (4th Cir.), *cert. denied,* 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995); *see also Bartges,* 908 F.Supp. at 1333 n. 7 (noting that it appears to be impossible under Fourth Circuit law for a plaintiff to bring a claim directly under the Fourteenth Amendment). Instead, 42 U.S.C. § 1983 provides a plaintiff with the "statutory basis to receive a remedy for the deprivation of a constitutional right." *Hughes,* 48 F.3d at 1383 n. 6. Based upon this Fourth Circuit case law, it appears that Plaintiff must rely upon § 1983 to assert his equal protection claims against Defendant. However, as Defendant emphasizes, § 1983 only applies to a "person" who has acted under color of state or territorial law to deprive another of rights under the Constitution or federal law. *See* 42 U.S.C. § 1983. Defendant, who is a state entity, is not a "person" for the purposes of § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45, 58 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Bartges,* 908 F.Supp. at 1332 (holding that UNC at Charlotte is not a § 1983 "person"). Therefore, the Court finds that Plaintiff's equal protection claims can be dismissed on the additional ground that, pursuant to Rule 12(b)(6), they fail to state a claim upon which relief may be granted.