(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FEDERAL EXPRESS CORP. *v.* HOLOWECKI ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 06–1322.  Argued November 6, 2007—Decided February 27, 2008

The Age Discrimination in Employment Act of 1967 (ADEA) requires that "[n]o civil action . . . be commenced . . . until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission" (EEOC), 29 U. S. C. §626(d), but does not define the term "charge." After petitioner delivery service (FedEx) initiated programs tying its couriers' compensation and continued employment to certain performance benchmarks, respondent Kennedy (hereinafter respondent), a FedEx courier over age 40, filed with the EEOC, in December 2001, a Form 283 "Intake Questionnaire" and a detailed affidavit supporting her contention that the FedEx programs discriminated against older couriers in violation of the ADEA. In April 2002, respondent and others filed this ADEA suit claiming, *inter alia*, that the programs were veiled attempts to force out, harass, and discriminate against older couriers. FedEx moved to dismiss respondent's action, contending she had not filed the "charge" required by §626(d). Respondent countered that her Form 283 and affidavit constituted a valid charge, but the District Court disagreed and granted FedEx's motion. The Second Circuit reversed.

*Held:*

   1. In addition to the information required by the implementing regulations, *i.e.*, an allegation of age discrimination and the name of the charged party, if a filing is to be deemed a "charge" under the ADEA it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee. Pp. 3–13.

      (a) There is little dispute that the EEOC's regulations—so far as they go—are reasonable constructions of the statutory term "charge"

Syllabus

and are therefore entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–845. However, while the regulations give some content to the term charge, they fall short of a comprehensive definition. Thus, the issue is the guidance the regulations give. Title 29 CFR §1626.3 says: "charge shall mean a statement filed with the [EEOC] which alleges that the named prospective defendant has engaged in or is about to engage in acts in violation of the Act." Section 1626.8(a) identifies information a "charge should contain," including: the employee's and employer's names, addresses, and phone numbers; an allegation that the employee was the victim of age discrimination; the number of employees of the charged employer; and a statement indicating whether the charging party has initiated state proceedings. Section 1626.8(b), however, seems to qualify these requirements by stating that a charge is "sufficient" if it meets the requirements of §1626.6—*i.e.*, if it is "in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act(s)." That the meaning of charge remains unclear, even with the regulations, is evidenced by the differing positions of the parties and the Courts of Appeals on the matter. Pp. 3–5.

(b) Just as this Court defers to reasonable statutory interpretations, an agency is entitled to deference when it adopts a reasonable interpretation of its regulations, unless its position is " ' plainly erroneous or inconsistent with the regulation,' " *Auer* v. *Robbins*, 519 U. S. 452, 461. The Court accords such deference to the EEOC's position that its regulations identify certain requirements for a charge but do not provide an exhaustive definition. It follows that a document meeting §1626.6's requirements is not a charge in every instance. The language in §§1626.6 and 1626.8 cannot be viewed in isolation from the rest of the regulations. While the regulations' structure is less than clear, the relevant provisions are grouped under the title, "Procedures—Age Discrimination in Employment Act." A permissible reading is that the regulations identify the procedures for filing a charge but do not state the full contents of a charge. Pp. 5–6.

(c) That does not resolve this case because the regulations do not state what additional elements are required in a charge. The EEOC submits, in accordance with a position it has adopted in internal directives over the years, that the proper test is whether a filing, taken as a whole, should be construed as a request by the employee for the EEOC to take whatever action is necessary to vindicate her rights. Pp. 6–8.

(d) The EEOC acted within its authority in formulating its request-to-act requirement. The agency's policy statements, embodied

in its compliance manual and internal directives, interpret not only its regulations but also the statute itself. Assuming these interpretive statements are not entitled to full *Chevron* deference, they nevertheless are entitled to a "measure of respect" under the less deferential standard of *Skidmore* v. *Swift & Co.*, 323 U. S. 134, see *Alaska Dept. of Environmental Conservation* v. *EPA*, 540 U. S. 461, 487, whereby the Court considers whether the agency has consistently applied its position, *e.g., United States* v. *Mead Corp.*, 533 U. S. 218, 228. Here, the relevant interpretive statement has been binding on EEOC staff for at least five years. True, the agency's implementation has been uneven; *e.g.,* its field office did not treat respondent's filing as a charge, and, as a result, she filed suit before the EEOC could initiate conciliation with FedEx. Such undoubted deficiencies are not enough, however, to deprive an agency that processes over 175,000 inquiries a year of all judicial deference. Moreover, the charge must be defined in a way that allows the agency to fulfill its distinct statutory functions of enforcing antidiscrimination laws, see 29 U. S. C. §626(d), and disseminating information about those laws to the public, see, *e.g.,* Civil Rights Act of 1964, §§705(i), 705(g)(3). Pp. 8–12.

(e) FedEx's view that because the EEOC must act "[u]pon receiving . . . a charge," 29 U. S. C. §626(d), its failure to do so means the filing is not a charge, is rejected as too artificial a reading of the ADEA. The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action. Cf. *Edelman* v. *Lynchburg College*, 535 U. S. 106, 112–113. Moreover, because the filing of a charge determines when the ADEA's time limits and procedural mechanisms commence, it would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control. Cf. *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 444. Pp. 12–13.

2. The agency's determination that respondent's December 2001 filing was a charge is a reasonable exercise of its authority to apply its own regulations and procedures in the course of the routine administration of the statute it enforces. Pp. 13–17.

(a) Respondent's completed Form 283 contained all the information outlined in 29 CFR §1626.8, and, although the form did not itself request agency action, the accompanying affidavit asked the EEOC to "force [FedEx] to end [its] age discrimination plan." FedEx contends unpersuasively that, in context, the latter statement is ambiguous because the affidavit also stated: "I have been . . . assur[ed] by [the EEOC] that this Affidavit will be considered confidential . . . and will not be disclosed . . . unless it becomes necessary . . . to produce the affidavit in a formal proceeding." This argument reads too much into

Syllabus

the nondisclosure assurances.  Respondent did not request the EEOC to avoid contacting FedEx, but stated only her understanding that the affidavit itself would be kept confidential and, even then, consented to disclosure of the affidavit in a "formal proceeding."  Furthermore, respondent checked a box on the Form 283 giving consent for the EEOC to disclose her identity to FedEx.  The fact that respondent filed a formal charge with the EEOC after she filed her District Court complaint is irrelevant because postfiling conduct does not nullify an earlier, proper charge.  Pp. 13–15.

   (b) Because the EEOC failed to treat respondent's filing as a charge in the first instance, both sides lost the benefits of the ADEA's informal dispute resolution process.  The court that hears the merits can attempt to remedy this deficiency by staying the proceedings to allow an opportunity for conciliation and settlement.  While that remedy is imperfect, it is unavoidable in this case.  However, the ultimate responsibility for establishing a clearer, more consistent process lies with the EEOC, which should determine, in the first instance, what revisions to its forms and processes are necessary or appropriate to reduce the risk of future misunderstandings by those who seek its assistance.  Pp. 16–17.

440 F. 3d 558, affirmed.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SOUTER, GINSBURG, BREYER, and ALITO, JJ., joined. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1322

FEDERAL EXPRESS CORPORATION, PETITIONER *v.*
PAUL HOLOWECKI ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[February 27, 2008]

JUSTICE KENNEDY delivered the opinion of the Court.

This case arises under the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, 29 U. S. C. §621 *et seq.* When an employee files "a charge alleging unlawful [age] discrimination" with the Equal Employment Opportunity Commission (EEOC), the charge sets the Act's enforcement mechanisms in motion, commencing a waiting period during which the employee cannot file suit. The phrase, "a charge alleging unlawful discrimination," is used in the statute, §626(d), and "charge" appears in the agency's implementing regulations; but it has no statutory definition. In deciding what constitutes a charge under the Act the Courts of Appeals have adopted different definitions. As a result, difficulties have arisen in determining when employees may seek relief under the ADEA in courts of competent jurisdiction.

As a cautionary preface, we note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42

U. S. C. §2000e *et seq.*, and the Americans with Disabilities Act of 1990, 104 Stat. 327, as amended, 42 U. S. C. §12101 *et seq.* While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. Cf. *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581, 586–587 (2004). This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case.

I

Petitioner, Federal Express Corporation (FedEx), provides mail pickup and delivery services to customers worldwide. In 1994 and 1995, FedEx initiated two programs, designed, it says, to make its 45,000-strong courier network more productive. The programs, "Best Practice Pays" (BPP) and "Minimum Acceptable Performance Standards" (MAPS), tied the couriers' compensation and continued employment to certain performance benchmarks, for instance the number of stops a courier makes per day.

Respondents are 14 current and former FedEx couriers over the age of 40. They filed suit in the United States District Court for the Southern District of New York on April 30, 2002, claiming, *inter alia*, that BPP and MAPS violate the ADEA. Asserting that their claims were typical of many couriers nationwide, respondents sought to represent a plaintiffs' class of all couriers over the age of 40 who were subject to alleged acts of age discrimination by FedEx. The suit maintains that BPP and MAPS were veiled attempts to force older workers out of the company before they would be entitled to receive retirement benefits. FedEx, it is alleged, used the initiatives as a pretext for harassing and discriminating against older couriers in favor of younger ones.

The immediate question before us is the timeliness of the suit filed by one of the plaintiffs below, Patricia Kennedy, referred to here as "respondent." Petitioner moved to dismiss respondent's action, contending respondent had not filed her charge with the EEOC at least 60 days before filing suit, as required by 29 U. S. C. §626(d). Respondent countered that she filed a valid charge on December 11, 2001, by submitting EEOC Form 283.

The agency labels Form 283 an "Intake Questionnaire." Respondent attached to the questionnaire a signed affidavit describing the alleged discriminatory employment practices in greater detail. The District Court determined these documents were not a charge and granted the motion to dismiss. No. 02 Civ. 3355(LMM) (SDNY, Oct. 9, 2002), App. to Pet. for Cert. 39a. An appeal followed, and the Court of Appeals for the Second Circuit reversed. See 440 F. 3d 558, 570 (2006). We granted certiorari to consider whether respondent's filing was a charge, 551 U. S. \_\_\_ (2007), and we now affirm.

## II

This case presents two distinct questions: What is a charge as the ADEA uses that term? And were the documents respondent filed in December 2001 a charge?

## A

The relevant statutory provision states:

> "No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. . . .

.     .     .     .     .

> "Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as

prospective defendants in the action and shall
promptly seek to eliminate any alleged unlawful prac-
tice by informal methods of conciliation, conference,
and persuasion."  29 U. S. C. §626(d).

The Act does not define charge.  While EEOC regula-
tions give some content to the term, they fall short of a
comprehensive definition.  The agency has statutory au-
thority to issue regulations, see §628; and when an agency
invokes its authority to issue regulations, which then
interpret ambiguous statutory terms, the courts defer to
its reasonable interpretations.  See *Chevron U. S. A. Inc.*
v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837,
843–845 (1984).    The regulations the agency has
adopted—so far as they go—are reasonable constructions
of the term charge.  There is little dispute about this.  The
issue is the guidance the regulations give.

One of the regulations, 29 CFR §1626.3 (2007), is enti-
tled "Other definitions."  It says: "*charge* shall mean a
statement filed with the Commission by or on behalf of an
aggrieved person which alleges that the named prospec-
tive defendant has engaged in or is about to engage in
actions in violation of the Act."  Section 1626.8(a) identi-
fies five pieces of information a "charge should contain":
(1)–(2) the names, addresses, and telephone numbers of
the person making the charge and the charged entity; (3) a
statement of facts describing the alleged discriminatory
act; (4) the number of employees of the charged employer;
and (5) a statement indicating whether the charging party
has initiated state proceedings.   The next subsection,
§1626.8(b), however, seems to qualify these requirements
by stating that a charge is "sufficient" if it meets the re-
quirements of §1626.6—*i.e.*, if it is "in writing and . . .
name[s] the prospective respondent and . . . generally
allege[s] the discriminatory act(s)."

Even with the aid of the regulations the meaning of

charge remains unclear, as is evident from the differing positions of the parties now before us and in the Courts of Appeals. Petitioner contends an Intake Questionnaire cannot be a charge unless the EEOC acts upon it. On the other hand some Courts of Appeals, including the Court of Appeals for the Second Circuit, take a position similar to the Government's in this case, that an Intake Questionnaire can constitute a charge if it expresses the filer's intent to activate the EEOC's enforcement processes. See, *e.g.*, *Steffen* v. *Meridian Life Ins. Co.*, 859 F. 2d 534, 542 (CA7 1988). A third view, which seems to accord with respondent's position, is that all completed Intake Questionnaires are charges. See, *e.g.*, *Casavantes* v. *California State Univ., Sacramento*, 732 F. 2d 1441, 1443 (CA9 1984).

## B

In support of her position that the Intake Questionnaire she filed, taken together with the attached six-page affidavit, meets the regulatory definition of a charge, respondent places considerable emphasis on what might be described as the regulations' catchall or savings provision, 29 CFR §1626.8(b). This seems to require only a written document with a general allegation of discriminatory conduct by a named employer. Respondent points out that, when read together, §§1626.8(b) and 1626.6 say that a "charge is sufficient when the Commission receives . . . a written statement" that "name[s] the [employer] and . . . generally allege[s] the discriminatory act(s)." Respondent views this language as unequivocal and sees no basis for requiring that a charge contain any additional information.

The EEOC's view, as expressed in the Government's *amicus* brief, however, is that the regulations identify certain requirements for a charge but do not provide an exhaustive definition. As such, not all documents that meet the minimal requirements of §1626.6 are charges.

The question, then, becomes how to interpret the scope of the regulations. Just as we defer to an agency's reasonable interpretations of the statute when it issues regulations in the first instance, see *Chevron*, *supra*, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force. See *Auer* v. *Robbins*, 519 U. S. 452 (1997). Under *Auer,* we accept the agency's position unless it is "'"plainly erroneous or inconsistent with the regulation."'" *Id.*, at 461 (quoting *Robertson* v. *Methow Valley Citizens Council*, 490 U. S. 332, 359 (1989)).

In accord with this standard we accept the agency's position that the regulations do not identify all necessary components of a charge; and it follows that a document meeting the requirements of §1626.6 is not a charge in every instance. The language in §§1626.6 and 1626.8 cannot be viewed in isolation from the rest of the regulations. True, the structure of the regulations is less than clear. But the relevant provisions are grouped under the title, "Procedures—Age Discrimination in Employment Act." A permissible reading is that the regulations identify the procedures for filing a charge but do not state the full contents a charge document must contain. This is the agency's position, and we defer to it under *Auer*.

## C

This does not resolve the case. While we agree with the Government that the regulations do not state all the elements a charge must contain, the question of what additional elements are required remains. On this point the regulations are silent.

The EEOC submits that the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights. Brief for United States as *Amicus*

*Curiae* 15. The EEOC has adopted this position in the Government's *amicus* brief and in various internal directives it has issued to its field offices over the years. See 1 EEOC Compliance Manual §2.2(b), p. 2:0001 (Aug. 2002); Memorandum from Elizabeth M. Thornton, Director, Office of Field Programs, EEOC, to All District, Area, and Local Office Directors et al. (Feb. 21, 2002), on line at http://www.eeoc.gov/charge/memo-2-21-02.html (hereinafter Thornton Memo) (all Internet materials as visited Feb. 21, 2008, and available in Clerk of Court's case file); Memorandum from Nicholas M. Inzeo, Director, Office of Field Programs, EEOC, to All District, Field, Area, and Local Office Directors et al. (Aug. 13, 2007), on line at http://www.eeoc.gov/charge/memo-8-13-07.html. The Government asserts that this request-to-act requirement is a reasonable extrapolation of the agency's regulations and that, as a result, the agency's position is dispositive under *Auer*.

The Government acknowledges the regulations do not, on their face, speak to the filer's intent. To the extent the request-to-act requirement can be derived from the text of the regulations, it must spring from the term charge. But, in this context, the term charge is not a construct of the agency's regulations. It is a term Congress used in the underlying statute that has been incorporated in the regulations by the agency. Thus, insofar as they speak to the filer's intent, the regulations do so by repeating language from the underlying statute. It could be argued, then, that this case can be distinguished from *Auer*. See *Gonzales* v. *Oregon*, 546 U. S. 243, 257 (2006) (the "near equivalence of the statute and regulation belies [the case for] *Auer* deference"); *Christensen* v. *Harris County*, 529 U. S. 576, 588 (2000) (an agency cannot "under the guise of interpreting a regulation . . . create *de facto* a new regulation").

It is not necessary to hold that *Auer* deference applies to

the agency's construction of the term charge as it is used in the regulations, however. For even if *Auer* deference is inapplicable, we would accept the agency's proposed construction of the statutory term, and we turn next to the reasons for this conclusion.

D

In our view the agency's policy statements, embodied in its compliance manual and internal directives, interpret not only the regulations but also the statute itself. Assuming these interpretive statements are not entitled to full *Chevron* deference, they do reflect "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Bragdon* v. *Abbott*, 524 U. S. 624, 642 (1998) (quoting *Skidmore* v. *Swift & Co.*, 323 U. S. 134 (1944)). As such, they are entitled to a "measure of respect" under the less deferential *Skidmore* standard. *Alaska Dept. of Environmental Conservation* v. *EPA*, 540 U. S. 461, 487, 488 (2004); *United States* v. *Mead Corp.*, 533 U. S. 218, 227–239 (2001).

Under *Skidmore*, we consider whether the agency has applied its position with consistency. *Mead Corp., supra,* at 228; *Good Samaritan Hospital* v. *Shalala*, 508 U. S. 402, 417 (1993). Here, the relevant interpretive statement, embodied in the compliance manual and memoranda, has been binding on EEOC staff for at least five years. See Thornton Memo, *supra*. True, as the Government concedes, the agency's implementation of this policy has been uneven. See Brief for United States as *Amicus Curiae* 25. In the very case before us the EEOC's Tampa field office did not treat respondent's filing as a charge, as the Government now maintains it should have done. And, as a result, respondent filed suit before the agency could initiate a conciliation process with the employer.

These undoubted deficiencies in the agency's administration of the statute and its regulatory scheme are not

enough, however, to deprive the agency of all judicial deference. Some degree of inconsistent treatment is unavoidable when the agency processes over 175,000 inquiries a year. *Id.*, at 19, n. 10. And although one of the policy memoranda the Government relies upon was circulated after we granted certiorari, the position the document takes is consistent with the EEOC's previous directives. We see no reason to assume the agency's position—that a charge is filed when the employee requests some action— was framed for the specific purpose of aiding a party in this litigation. Cf. *Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 212–213 (1988).

The EEOC, moreover, has drawn our attention to the need to define charge in a way that allows the agency to fulfill its distinct statutory functions of enforcing antidiscrimination laws and disseminating information about those laws to the public. Cf. *Barnhart* v. *Walton*, 535 U. S. 212, 225 (2002) (noting that deference is appropriate in "matters of detail related to [an agency's] administration" of a statute). The agency's duty to initiate informal dispute resolution processes upon receipt of a charge is mandatory in the ADEA context. See 29 U. S. C. §626(d) ("[T]he Commission . . . shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion"); Cf. *Lopez* v. *Davis*, 531 U. S. 230, 241 (2001) (noting that Congress' use of the term "'shall'" indicates an intent to "impose discretionless obligations"). Yet, at the same time, Congress intended the agency to serve an "educational" function. See Civil Rights Act of 1964, §705(i), 78 Stat. 259; *id.*, §705(g)(3) (noting that the Commission shall have the power to "furnish to persons subject to this title such technical assistance as they may request"). Providing answers to the public's questions is a critical part of the EEOC's mission; and it accounts for a substantial part of the agency's work. Of about 175,000 inquiries the agency

receives each year, it dockets around 76,000 of these as charges. Brief for United States as *Amicus Curiae* 19, n. 10. Even allowing for errors in the classification of charges and noncharges, it is evident that many filings come from individuals who have questions about their rights and simply want information.

For efficient operations, and to effect congressional intent, the agency requires some mechanism to separate information requests from enforcement requests. Respondent's proposed standard, that a charge need contain only an allegation of discrimination and the name of the employer, falls short in this regard. Were that stripped-down standard to prevail, individuals who approach the agency with questions could end up divulging enough information to create a charge. This likely would be the case for anyone who completes an Intake Questionnaire—which provides space to indicate the name and address of the offending employer and asks the individual to answer the question, "What action was taken against you that you believe to be discrimination?" App. to Pet. for Cert. 43a. If an individual knows that reporting this minimal information to the agency will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile. The result would be contrary to Congress' expressed desire that the EEOC act as an information provider and try to settle employment disputes through informal means.

For these reasons, the definition of charge respondent advocates—*i.e.*, that it need conform only to 29 CFR §1626.6—is in considerable tension with the structure and purposes of the ADEA. The agency's interpretive position—the request-to-act requirement—provides a reasonable alternative that is consistent with the statutory framework. No clearer alternatives are within our authority or expertise to adopt; and so deference to the agency is

appropriate under *Skidmore*. We conclude as follows: In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

Some Courts of Appeals have referred to a "'manifest intent'" test, under which, in order to be deemed a charge, the filing must demonstrate "an individual's intent to have the agency initiate its investigatory and conciliatory processes." 440 F. 3d, at 566 (case below); see also *Wilkerson* v. *Grinnell Corp.*, 270 F. 3d 1314, 1319 (CA11 2001); *Steffen,* 859 F. 2d, at 543; *Bihler* v. *Singer Co.*, 710 F. 2d 96, 99 (CA3 1983). If this formulation suggests the filer's state of mind is somehow determinative, it misses the point. If, however, it means the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes, that would be in accord with our conclusion.

It is true that under this permissive standard a wide range of documents might be classified as charges. But this result is consistent with the design and purpose of the ADEA. Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties. See *Estelle* v. *Gamble*, 429 U. S. 97, 106 (1976) (*Pro se* pleadings are to be "liberally construed"). In the administrative context now before us it appears *pro se* filings may be the rule, not the exception. The ADEA, like Title VII, sets up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *EEOC* v. *Commercial Office Products Co.*, 486 U. S. 107, 124 (1988); see also *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 756 (1979) (noting the "common purpose" of Title VII

and the ADEA). The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft. The agency's proposed test implements these purposes.

Reasonable arguments can be made that the agency should adopt a standard giving more guidance to filers, making it clear that the request to act must be stated in quite explicit terms. A rule of that sort might yield more consistent results. This, however, is a matter for the agency to decide in light of its experience and expertise in protecting the rights of those who are covered by the Act. For its decisions in this regard the agency is subject to the oversight of the political branches. Cf. *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967, 980 (2005) ("Filling these gaps [in ambiguous statutes] involves difficult policy choices that agencies are better equipped to make than courts"). We find no reason in this case to depart from our usual rule: Where ambiguities in statutory analysis and application are presented, the agency may choose among reasonable alternatives.

E

Asserting its interest as an employer, petitioner urges us to condition the definition of charge, and hence an employee's ability to sue, upon the EEOC's fulfilling its mandatory duty to notify the charged party and initiate a conciliation process. In petitioner's view, because the Commission must act "[u]pon receiving such a charge," 29 U. S. C. §626(d), its failure to do so means the filing is not a charge.

The agency rejects this view, as do we. As a textual matter, the proposal is too artificial a reading of the stat-

ute to accept. The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action. *Ibid.* ("No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission"); Cf. *Edelman* v. *Lynchburg College*, 535 U. S. 106, 112–113 (2002) (rejecting the argument that a charge is not a charge until the filer satisfies Title VII's oath or affirmation requirement). The filing of a charge, moreover, determines when the Act's time limits and procedural mechanisms commence. It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control. Cf. *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 444 (1982) (Powell, J., concurring in judgment).

## III

Having determined that the agency acted within its authority in formulating the rule that a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf, the question is whether the filing here meets this test. The agency says it does, and we agree. The agency's determination is a reasonable exercise of its authority to apply its own regulations and procedures in the course of the routine administration of the statute it enforces.

Respondent's completed intake form contained all of the information outlined in 29 CFR §1626.8, including: the employee's name, address, and telephone number, as well as those of her employer; an allegation that she and other employees had been the victims of "age discrimination"; the number of employees who worked at the Dunedin, Florida, facility where she was stationed; and a statement

indicating she had not sought the assistance of any government agency regarding this matter. See App. 265.

Petitioner maintains the filing was still deficient because it contained no request for the agency to act. Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action. The design of the form in use in 2001, moreover, does not give rise to the inference that the employee requests action against the employer. Unlike EEOC Form 5, the Intake Questionnaire is not labeled a "Charge of Discrimination," see *id.*, at 275. In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over "potential charges." *Id.*, at 265. There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.

In this case, however, the completed questionnaire filed in December 2001 was supplemented with a detailed six-page affidavit. At the end of the last page, respondent asked the agency to "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of *Best Practice/High-Velocity Culture Change*." *Id.,* at 273. This is properly construed as a request for the agency to act.

Petitioner says that, in context, the statement is ambiguous. It points to respondent's accompanying statement that "I have been given assurances by an Agent of the U. S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary

for the Government to produce the affidavit in a formal proceeding." *Id.*, at 266. Petitioner argues that if respondent intended the affidavit to be kept confidential, she could not have expected the agency to treat it as a charge. This reads too much into the assurance of nondisclosure. Respondent did not request the agency to avoid contacting her employer. She stated only her understanding that the affidavit itself would be kept confidential. Even then, she gave consent for the agency to disclose the affidavit in a "formal proceeding." Furthermore, respondent checked a box on the Intake Questionnaire giving consent for the agency to disclose her identity to the employer. *Id.*, at 265. Here the combination of the waiver and respondent's request in the affidavit that the agency "force" the employer to stop discriminating against her were enough to bring the entire filing within the definition of charge we adopt here.

Petitioner notes that respondent did file a Form 5 (a formal charge) with the EEOC but only after she filed her complaint in the District Court. This shows, petitioner argues, that respondent did not intend the earlier December 2001 filing to be a charge; otherwise, there would have been no reason for the later filing. What matters, however, is whether the documents filed in December 2001 should be interpreted as a request for the agency to act. Postfiling conduct does not nullify an earlier, proper charge.

Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted. It would encourage individuals to avoid filing errors by retaining counsel, increasing both the cost and

likelihood of litigation.

### IV

The Federal Government interacts with individual citizens through all but countless forms, schedules, manuals, and worksheets. Congress, in most cases, delegates the format and design of these instruments to the agencies that administer the relevant laws and processes. An assumption underlying the congressional decision to delegate rulemaking and enforcement authority to the agency, and the consequent judicial rule of deference to the agency's determinations, is that the agency will take all efforts to ensure that affected parties will receive the full benefits and protections of the law. Here, because the agency failed to treat respondent's filing as a charge in the first instance, both sides lost the benefits of the ADEA's informal dispute resolution process.

The employer's interests, in particular, were given short shrift, for it was not notified of respondent's complaint until she filed suit. The court that hears the merits of this litigation can attempt to remedy this deficiency by staying the proceedings to allow an opportunity for conciliation and settlement. True, that remedy would be imperfect. Once the adversary process has begun a dispute may be in a more rigid cast than if conciliation had been attempted at the outset.

This result is unfortunate, but, at least in this case, unavoidable. While courts will use their powers to fashion the best relief possible in situations like this one, the ultimate responsibility for establishing a clearer, more consistent process lies with the agency. The agency already has made some changes to the charge-filing process. See Brief for United States as *Amicus Curiae* 3, n. 2 (noting that the Intake Questionnaire form respondent filed has been replaced with a reworded form). To reduce the risk of further misunderstandings by those who seek its

Opinion of the Court

assistance, the agency should determine, in the first in-stance, what additional revisions in its forms and proc-esses are necessary or appropriate.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–1322

———————

## FEDERAL EXPRESS CORPORATION, PETITIONER *v.* PAUL HOLOWECKI ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[February 27, 2008]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

Today the Court decides that a "charge" of age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) is whatever the Equal Employment Opportunity Commission (EEOC) says it is. The filing at issue in this case did not state that it was a charge and did not include a charge form; to the contrary, it included a form that expressly stated it was for the purpose of "precharge" counseling. What is more, the EEOC did not assign it a charge number, notify the employer of the complainant's[1] allegations, or commence enforcement proceedings. Notwithstanding these facts, the Court concludes, counterintuitively, that respondent's filing is a charge because it manifests an intent for the EEOC to take "some action." *Ante*, at 9. Because the standard the Court applies is broader than the ordinary meaning of the

———————

[1] This opinion will refer to potentially-charging parties who contact the EEOC about discrimination as "complainants." I use this term for simplicity and do not intend to invoke the distinction in the EEOC's regulations between complainants and charging parties. See 29 CFR §1626.3 (2007). Similarly, I use "respondent" not as it appears in the EEOC's regulations—referring to the "prospective defendant in a charge or complaint," *ibid.*—but as a reference to the responding parties in this case.

term "charge," and because it is so malleable that it effectively absolves the EEOC of its obligation to administer the ADEA according to discernible standards, I respectfully dissent.

I

As the Court notes, the ADEA directs the agency to take certain actions upon receipt of a "charge" but does not define that word. *Ante*, at 3–4. Because there is nothing to suggest that Congress used "charge" as a term of art, we must construe it "in accordance with its ordinary or natural meaning." See *FDIC* v. *Meyer*, 510 U. S. 471, 476 (1994). Dictionaries define a "charge" as an accusation or indictment. See, *e.g.*, American Heritage Dictionary 312 (4th ed. 2000); Webster's Third New International Dictionary 377 (1993). In legal parlance, a "charge" is generally a formal allegation of wrongdoing that initiates legal proceedings against an alleged wrongdoer. In criminal law, for example, a charge is defined as "[a] formal accusation of an offense as a preliminary step to prosecution." Black's Law Dictionary 248 (8th ed. 2004). Similarly, in this context, a "charge" is a formal accusation of discrimination that objectively manifests an intent to initiate enforcement proceedings against the employer. Just as a complaint or police report that describes the commission of a crime is not a "charge" under the criminal law, so too here, a document that merely describes the alleged discrimination and requests the EEOC's assistance, but does not objectively manifest an intent to initiate enforcement proceedings, is not a "charge" within the meaning of the ADEA.

This understanding of a "charge" is common in administrative law. The regulations governing allegations of unlawful employment practices at the Government Accountability Office, for example, define "charge" as "any request filed . . . to investigate any matter" within the

jurisdiction of the agency. 4 CFR §28.3 (2006). In actions alleging unfair labor practices, the "purpose of the charge is . . . to set in motion the [National Labor Relations] Board's investigative machinery." *Flex Plastics, Inc.*, 262 N. L. R. B. 651, 652 (1982). In accordance with the charge's purpose of triggering an investigation that involves notice to the employer, agencies often indicate that the charge will not be kept confidential. For example, the EEOC anticipates that a charge usually will be released to the employer. See, *e.g.*, 1 EEOC Compliance Manual §2.2(b), p. 2:0001 (Aug. 2002) (hereinafter EEOC Manual) (providing that correspondence may be processed as a charge if, *inter alia*, it "does not express concerns about confidentiality"); §3.6, at 3:0001 (noting that "it is EEOC policy to . . . serve the [employer] with a copy of ADEA charges unless this will impede EEOC's law enforcement functions").

The ordinary understanding of the term "charge" applies equally in the employment discrimination context, where a charge is a formal accusation that an employer has violated, or will violate, employment discrimination laws. See 29 CFR §1626.3 (2007) (describing a charge as an allegation that an employer "has engaged in or is about to engage in actions in violation of the Act"). The charge is presented to the agency with jurisdiction over such matters—the EEOC—to trigger enforcement proceedings that are intended to eliminate violations of the ADEA. See 29 U. S. C. §626(d) (directing the agency, upon receipt of a charge, to notify the employer and take steps to eliminate the allegedly unlawful practice). I therefore agree with the EEOC that the statutory term "charge" must mean, at a minimum,[2] a writing that objectively indicates an intent

_____

[2] I do not mean to foreclose the possibility that the EEOC may include additional elements in its definition, as long as they are reasonable constructions of the statutory term "charge." See *Chevron U. S. A. Inc.*

to initiate the agency's enforcement processes. See Brief for United States as *Amicus Curiae* 15 (noting that a charge must "objectively manifest an intent to make a formal accusation" of an ADEA violation). To the extent the Court's test is subjective, see, *e.g., ante,* at 11 (noting that a charge indicates that the complainant "wants" to activate the EEOC's processes), I disagree with the Court's formulation as inconsistent with the objective test that is the EEOC's "considered view."[3]    See Brief for United

———————

v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–845 (1984).

    [3] As the EEOC acknowledges, its position on whether intent is required has varied over the years. See Brief for United States as *Amicus Curiae* 8, 16–17, n. 8. In 1983, the agency issued its regulations, which contain no intent requirement. Final Procedural Regulations; Age Discrimination in Employment Act, 48 Fed. Reg. 138. Five years later, it argued against an intent requirement as *amicus curiae* in *Steffen* v. *Meridian Life Ins. Co.*, 859 F. 2d 534, 544 (CA7 1988) ("The EEOC, which has appeared as amicus curiae on Steffen's behalf, has supported Steffen's contention that a completed Intake Questionnaire, in and of itself, constitutes a charge"). In 2002, the agency issued an internal memorandum and internal guidance documents including an intent requirement. See Memorandum from Elizabeth M. Thornton, Director, Office of Field Programs, EEOC, to All District, Area, and Local Office Directors et al. (Feb. 21, 2002), online at http://www. eeoc.gov/charge/memo-2-21-02.html (all Internet materials as visited Feb. 22, 2008 and available in Clerk of Court's case file); 1 EEOC Manual §2.2(b), at 2:0001 (noting that correspondence must, *inter alia*, "constitut[e] a clear and timely request for  EEOC to act" before it can be construed as a charge). The EEOC contradicted itself four years later, when it again took the position that there was no intent requirement in *Gordon* v. *Shafer Contracting Co.*, 469 F. 3d 1191, 1194 (CA8 2006) ("In an amicus brief, the EEOC urges us to accept such a verified Intake Questionnaire as satisfying the charge requirement"); see also Brief for United States as *Amicus Curiae* 16–17, n. 8. The following year, the EEOC issued another internal memorandum and updated the Frequently Asked Questions section of its Web site, including the intent requirement in each. Memorandum from Nicholas M. Inzeo, Director, Office of Field Programs, EEOC, to All District, Field, Area, and Local Office Directors et al. (Aug. 13, 2007) (hereinafter Inzeo Memorandum),

States as *Amicus Curiae* 15. In any event, respondent's documents do not objectively indicate an intent to initiate the EEOC's processes; any test that construes them otherwise is, in my opinion, an unreasonable construction of the statutory term "charge," and unworthy of deference. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–845 (1984).

## II

The cumulative effect of two aspects of respondent's documents, the Court holds, illustrates that she filed a charge of discrimination: first, her request in her affidavit that the agency take action, and second, her marking of a box on the questionnaire form consenting to the release of her identity to her employer, Federal Express Corporation (FedEx). *Ante*, at 14. In my view, neither of these factors, separately or together, objectively indicates that respondent intended to initiate the EEOC's processes.

The last substantive paragraph of respondent's affidavit said: "Please force Federal Express to end their age discrimination . . . ." App. 273. But the issue here is not whether respondent wanted the EEOC to cause the company's compliance by *any* means; it is whether she wanted the EEOC immediately to employ the particular method of enforcement that consists of filing a charge. Her request to "force Federal Express to end their age discrimination" could have been met by the agency's *beginning* the interviewing and counseling process that would ultimately lead to a charge. Or the agency could have proceeded to enforcement without a charge. See *infra*, at 10–11, n. 5 (discussing the EEOC's authority to investigate age discrimination in the absence of any charge). Alternately,

---

online at http://www.eeoc.gov/charge/memo-8-13-07.html; EEOC Frequently Asked Questions, Answer to "How do I file a charge of employment discrimination?" (hereinafter EEOC FAQ), online at https://eeoc.custhelp.com.

after receiving indications of repeated violations by a particular company on many intake questionnaires, the agency could have approached the company informally, effectively forcing compliance by the threat of agency litigation. See B. Lindemann & D. Kadue, Age Discrimination in Employment Law 470 (2003) ("The EEOC may commence litigation under the ADEA without having to first file a charge, so long as it has attempted conciliation"). That sort of action would also have satisfied respondent's request. Respondent's statement to the EEOC no more constitutes expression of a present intent to file a charge than her request to a lawyer that he put an end to her employer's discrimination would constitute expression of present intent to file a complaint. The Court is simply wrong to say that a charge must merely request that the agency take "some action," *ante*, at 9, or "whatever action is necessary to vindicate her rights," *ante*, at 6, or unspecified "remedial action to protect the employee's rights," *ante*, at 11. To the contrary, a charge must request that the agency take *the particular form* of remedial action that results from filing a charge.

Aside from revealing the ambiguity in its definition of a "charge," the Court's constructions stretch the term far beyond what it can bear. A mere request for help from a complainant—who, the Court acknowledges, may "have no detailed knowledge of the relevant statutory mechanisms and agency processes," *ante*, at 11–12—cannot be equated with an intent to file a charge. The Court's test permits no principled basis for distinguishing a request for the agency to take what might be described as "pre-charge" actions, such as interviewing and counseling, from a request for the agency to commence enforcement proceedings. All are properly considered "agency action," all presumably would be part of the agency's remedial processes, and all are designed to protect the employee's rights. But a complainant's intent to trigger actions unrelated to charge-

processing plainly cannot form the basis for distinguishing charges from other inquiries because it lacks any grounding in the meaning of the statutory term.

Even if respondent's statement, viewed in isolation, could reasonably be understood as reflecting the requisite intent, it must be viewed in context. It is clear that respondent's filing, taken as a whole, did not amount to a request for the EEOC to commence enforcement proceedings. In fact, respondent's affidavit is replete with indications of an intent *not* to commence formal agency action. The entire first paragraph is an extensive statement that respondent had been assured her affidavit would be kept confidential, App. 266, suggesting that she did not intend the document to initiate enforcement proceedings, which would require the EEOC to notify FedEx of her allegations. See 1 EEOC Manual §2.2(b), at 2:0001 (stating that correspondence expressing concerns about confidentiality should not be treated as a charge). She identified the document as a "complaint." App. 266. And although the document was notarized and respondent attested to its truthfulness, nowhere did she state that she authorized the EEOC to attempt to resolve the dispute. *Id.*, at 266–274. Finally, the affidavit was attached to the intake questionnaire, which also gave no objective indication of any intent to activate the EEOC's enforcement proceedings.

As the Court concedes, the agency would not consider respondent's intake questionnaire a charge. *Ante*, at 14. Indeed, we are in agreement that the form contains numerous indicators that it will *not* be considered a charge. *Ibid.* (stating that the "design of the form . . . does not give rise to the inference that the employee requests action against the employer," and "[i]n fact the wording of the questionnaire suggests the opposite"). The title of the

form, "Intake Questionnaire,"[4] suggests that its purpose is preliminary information-gathering, not the filing of a formal charge. Likewise, the statement at the top of the form indicates that further steps are anticipated: "Please answer the following questions, telling us briefly why you have been discriminated against in employment. An officer of the EEOC will talk with you after you complete this form." App. 265. The form gives the complainant the opportunity to keep her identity confidential. *Ibid.* And it contains a Privacy Act statement on the back, prominently referenced on the front of the form, which states that the information provided on the questionnaire "will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over *potential charges*, complaints or allegations of employment discrimination and to provide such *pre-charge filing* counseling as is appropriate." *Ibid.* (emphasis added).

The Court apparently believes that these objective indicators are trumped by the fact that respondent marked the box authorizing the agency to disclose her identity to her employer. That portion of the form states: "Normally, your identity will be disclosed to the organization which allegedly discriminated against you. Do you consent or not consent to such disclosure?" *Ibid.* Since the form states it is for a narrow purpose and that identities of

_____

[4] An apparently more recent version of Form 283 is entitled "Charge Questionnaire," and states that, "[w]hen this form constitutes the only timely written statement of alleg[ed] . . . discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." 1 EEOC Manual, Exh. 1–B, at 1:0006; see also B. Lindemann & D. Kadue, Age Discrimination in Employment Law 477, n. 14 (2003). Although the "Charge Questionnaire" form is dated "Test 10/94," and is the only questionnaire form included in the Compliance Manual, it was not the form respondent used. Her intake questionnaire form was dated 1987. App. 265.

complainants are normally disclosed, there is no reason to view respondent's checking of the box as converting the form's stated narrow purpose to a broader one.

In comparison to the intake questionnaire, the Charge of Discrimination form contains a number of objective indications that it will trigger the agency's enforcement processes. Indeed, its very title clearly indicates that it is a charge, and it contains a space for a charge number. 1 EEOC Manual Exh. 2–C, at 2:0009. Although both forms require the complainant to sign and attest that the information is correct, only the Charge of Discrimination requests an attestation that the complainant intends to initiate the agency's procedures. Just above the space for the complainant's signature, the form states "I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures." *Ibid.* The form notes "Charging party" at the bottom of the space for the signature. *Ibid.* And it states on the back that "[t]he purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission." *Id.,* Exh. 2–C, at 2:0010. Also on the back, under "ROUTINE USES," the Charge of Discrimination states that "[i]nformation provided on this form will be used by Commission employees to guide the Commission's investigatory activities." *Ibid.* Although the EEOC prefers to receive a completed charge form, see Brief for United States as *Amicus Curiae* 18, n. 9 (noting that "EEOC's preferred practice is indeed to receive a completed Form 5 whenever possible"), another writing could indicate a complainant's intent to commence the EEOC's enforcement processes. But the form chosen by the complainant must be viewed as strong evidence of the complainant's intent, and that evidence

should be deemed overcome only if the document, viewed as a whole, compels that conclusion.

For the reasons I have described, respondent's intake questionnaire and attached affidavit do not objectively indicate that she intended to initiate the EEOC's enforcement processes. The Court's conclusion that the two factors "were enough to bring the entire filing within the definition of charge," *ante*, at 15, is not supported by the facts and, in my view, reveals that the Court's standard is sufficiently vacuous to permit the agency's *post hoc* interpretation of a document to control. But we cannot, under the guise of deference, sanction an agency's use of a standard that the agency has not adequately explained. Cf., *e.g.*, *Pearson* v. *Shalala*, 164 F. 3d 650, 660–661 (CADC 1999) (equating an agency's denial of a party's request based on the application of a vague term with simply saying "no" without explanation).

The malleability of the Court's test is further revealed by its statement that "[t]here might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." *Ante*, at 14. The clarity or pervasiveness of alleged discrimination is irrelevant to the employee's intent to file a charge. Although the Court states that the "agency is not required to treat every completed Intake Questionnaire as a charge," *ibid.*, it apparently would permit the EEOC to do so, because under the Court's test the EEOC can infer intent from circumstances—such as "clear or pervasive" discrimination—that have no grounding in the "intent to act" requirement.[5]

_____

[5] Perhaps the Court's statement is intended to address the EEOC's authority to investigate alleged discrimination even in the absence of a charge. Under Title VII, these are called "Commissioner Charges." See, *e.g.,* 29 CFR §1601.11(a) (2007). While the ADEA does not provide for such charges, the EEOC has independent authority to investigate

## III

Yet another indication that respondent's documents did not objectively manifest an intent to initiate the EEOC's enforcement processes is that the agency did not treat them as a charge. It did not assign a charge number, and it did not notify FedEx or commence its enforcement proceedings. This is not surprising: The EEOC accepts charges via a thorough intake process[6] in which completed intake questionnaires are not typically viewed as charges, but are used to assist the EEOC in developing the charge. A complainant visiting an EEOC office may be asked to complete an intake questionnaire. See EEOC FAQ, Answer to "How do I file a charge of employment discrimination?", online at https://eeoc.custhelp.com. An EEOC investigator then conducts a precharge interview, 1 EEOC Manual §2.4, at 2:0001; 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1685 (4th ed. 2007), covering a range of topics, including applicable laws, the complainant's allegations and other possibly discriminatory practices, confidentiality, time limits, notice requirements, and private suit rights. See 1 EEOC Manual §§2.4(a)–(g), at 2:0001–2:0003. Using the information contained in the intake questionnaire and gathered during

———————
age discrimination in the absence of any charge. See 29 U. S. C. §626(a); 29 CFR §1626.4; *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 28 (1991); 1 EEOC Manual §8.1, at 8:0001 (June 2001). If this is what the Court means by its statement that allegations of "clear or pervasive" discrimination may indicate to the agency that action is "required," *ante*, at 14, then it is not clear how it is relevant to the standards at issue in this case for evaluating an individual complainant's filing.

[6] This process, in all respects relevant to this case, has been consistently used by the agency since shortly after it assumed jurisdiction over ADEA actions in 1979. See 1 EEOC Manual §§2.1–2.7, at 2:0001–2:0006; 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1220 (3d ed. 1996); B. Schlei & P. Grossman, Employment Discrimination Law 939–940, 942, 948 (2d ed. 1983).

the interview, the investigator drafts the charge on a Form 5 Charge of Discrimination according to specific agency instructions, and also drafts an affidavit containing background data. See *id.,* §2.5, at 2:0003–2:0005. The investigator assigns a charge number and begins the process of serving notice on the employer and investigating the allegations. See 2 Lindemann & Grossman, *supra*, at 1685–1690.

Charges are thus typically completed and filed by the agency, not the complainant. See *Edelman* v. *Lynchburg College*, 535 U. S. 106, 115, n. 9 (2002) ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify" (citing Brief for United States et al. as *Amici Curiae* 24)); EEOC FAQ, Answers to "Where can I obtain copies of the forms to file a charge?" (stating that the agency's policy is not to provide blank charge forms); "How do I file a charge of employment discrimination?" ("When the field office has all the information it needs, you will be counseled regarding the strengths and weaknesses of a potential charge and/or you will receive a completed charge form (Form 5) for your signature"), online at https://eeoc.custhelp.com. Once the charge is complete, the EEOC notifies the employer of the charge, usually attaching a copy of the completed charge form. 1 EEOC Manual §3.6, at 3:0001 ("While 29 CFR §1626.11 only requires notice to the [employer] that an ADEA charge has been filed, it is EEOC policy to also serve the [employer] with a copy of ADEA charges unless this will impede EEOC's law enforcement functions"); Inzeo Memorandum, online at http://www.eeoc.gov/charge/memo-8-13-07.html.

To be sure, the EEOC is prepared to accept charges by other methods. If the complainant cannot or will not visit an EEOC office, an investigator may conduct the pre-charge interview and take the charge by telephone, see 1 EEOC Manual §§2.3, 2.4, at 2:0001, but the agency must

reduce the allegations to writing before they will be considered a charge, see 29 CFR §1626.8(b) ("[A] charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of §1626.6"). When the EEOC receives correspondence that is a potential charge, the investigator must contact the complainant and conduct an intake interview. See 1 EEOC Manual §2.2(a), at 2:0001. Alternatively, if the correspondence "contains all information necessary to begin investigating, constitutes a clear and timely request for EEOC to act, and does not express concerns about confidentiality or retaliation," then the investigator may process it as a charge without conducting an interview. See *id.,* §2.2(b), at 2:0001.

Thus, while the EEOC does not typically view an intake questionnaire as a charge, I would not rule out the possibility that, in appropriate circumstances, an intake questionnaire, like other correspondence, could contain the elements necessary to constitute a charge. But an intake questionnaire—even one accompanied by an affidavit—should not be construed as a charge unless it objectively indicates an intent to initiate the EEOC's enforcement processes. As I have explained, respondent's intake questionnaire and attached affidavit fall short of that standard. I would hold that the documents respondent filed with the EEOC were not a charge and thus did not preserve her right to sue.

The implications of the Court's decision will reach far beyond respondent's case. Today's decision does nothing—absolutely nothing—to solve the problem that under the EEOC's current processes no one can tell, *ex ante*, whether a particular filing is or is not a charge. Given the Court's utterly vague criteria, whatever the agency later decides to regard as a charge is a charge—and the statutorily required notice to the employer and conciliation process

THOMAS, J., dissenting

will be evaded in the future as it has been in this case. The Court's failure to apply a clear and sensible rule renders its decision of little use in future cases to complainants, employers, or the agency.

For these reasons, I would reverse the judgment below.